565 F.2d 1065
 UNITED STATES of America, Plaintiff-Appellee,
v.
Vernice GARRETT, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mary Ethel MORGAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
James KINSEY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jackson MORGAN, Defendant-Appellant.
 Nos. 76-2482, 76-2585, 76-2858 and 76-3137.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 8, 1977.
Rehearing and Rehearing En Banc Denied in No. 76-3137 Jan. 6, 1978.
 
 Justin M. Groshan, Los Angeles, Cal., Edward B. Critchlow, Richland, Wash., Donald B. Marks (argued), Beverly Hills, Cal., for defendants-appellants.
 Seaton M. Daly, Asst. U. S. Atty. (argued), Spokane, Wash., for plaintiff-appellee.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before DUNIWAY and HUFSTEDLER, Circuit Judges, and WILLIAMS,* District Judge.
 HUFSTEDLER, Circuit Judge:
 
 
 1
 Defendants Jackson and Mary Ethel Morgan, Vernice Garrett, and James Kinsey appeal from their convictions on multiple counts for conspiracy to possess and possession of narcotics in violation of 21 U.S.C. §§ 846, 841(a)(1). Mary Ethel Morgan and Garrett received concurrent sentences of 15 years' imprisonment and 25 years' special parole; Kinsey concurrent sentences of 5 years' imprisonment and 25 years' special parole. Jackson Morgan received enhanced sentences of 30 years' imprisonment, 25 years' special parole, and a $25,000 fine pursuant to 21 U.S.C. § 841(b)(1)(A).
 
 
 2
 Between May, 1975, and November, 1975, a federal narcotics agent and a paid informant made seven separate purchases of heroin from Kinsey in Pasco, Washington. These purchases totaled approximately twelve ounces of heroin and were paid for with marked government money. Close ground and aerial surveillance were maintained by federal narcotics agents throughout these transactions. On each of these occasions, Kinsey was observed leaving his apartment after receiving payment from government agents, traveling by car directly to the residence of Garrett, Kinsey's cousin, at 616 North Beech Street, remaining there for a short time, and then returning to his apartment before completing the transaction.
 
 
 3
 During the course of the transactions, Kinsey made various statements regarding the source of his supply. He claimed that his relatives were his source, that his local source, a woman in Pasco, occasionally also referred to as Vernice, obtained the heroin from her sister in Los Angeles, that the woman in California and her husband, the master of the heroin operation, owned and lived in an 18-unit apartment building in Los Angeles, that the woman in California traveled a great deal on behalf of her husband who was restricted to Los Angeles on parole due to a prior narcotics conviction, and that the husband once escaped being caught in a hotel room with $150,000 worth of heroin by flushing it down the toilet.
 
 
 4
 During late September and early October, 1975, when Garrett was in Alaska to be with her husband, Mary Ethel Morgan, Garrett's sister, and her vehicle with a California license plate, were observed on many occasions in the Pasco area and in front of the Garrett residence. On October 1, 1975, Mary Ethel's vehicle was also observed parked at the Garrett residence during one of the heroin transactions.
 
 
 5
 Pursuant to warrant, the Garrett residence was searched on November 15, 1975, the date of an agreed heroin purchase from Kinsey. Items seized during the search include 110 grams of heroin, 5 grams of cocaine, a quantity of a cutting agent, and documents containing notations which referred to quantities of heroin and cocaine and the names Ethel, Jack, Jessie, and Vernice.
 
 
 6
 Prior to October 21, 1975, Jackson Morgan, released from prison on parole in December, 1974, lived with his wife, Mary Ethel, at Apartment 7, 4048 Gelber Place, Los Angeles, an 18-unit apartment building owned by them. In February, 1975, Jackson was arrested by the Los Angeles Police Department ("LAPD") on a narcotics charge, which was later dismissed. On October 21, 1975, pursuant to state warrant, the Morgan residence in Los Angeles was searched by LAPD. Among the items seized were 300 grams of heroin, 21 grams of cocaine, cutting agents, a quantity of plastic baggies, a heat sealer, and a sum of $8,960. Some of the heroin was found on Jackson Morgan's person and some of the money was marked government money used in the October 1 heroin purchase from Kinsey in Pasco.
 
 
 7
 Following a joint jury trial, the appellants were found guilty on all of the counts charged. Garrett's husband was acquitted on six of the counts and a mistrial was declared as to the remaining counts when the jury was unable to reach a verdict.
 
 
 8
 * Counsel for Jackson Morgan contends on appeal that the district court erred in failing to suppress the evidence seized in the October 21 LAPD search of the Morgan residence because the same evidence was suppressed in the Superior Court of Los Angeles, where Jackson Morgan was charged with narcotics violations under state law.
 
 
 9
 Under Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) and Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960), the district court was correct in making an independent inquiry on the constitutional validity of the state search, irrespective of whether there had been such an inquiry by the state court, or how such an inquiry had turned out. (United States v. Bedford, 519 F.2d 650 (3d Cir. 1975).) Counsel for Jackson Morgan, however, strenuously contends that Elkins was overruled, at least implicitly, by Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).
 
 
 10
 Stone v. Powell, supra, held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (Id. at 494, 96 S.Ct. at 3046.) Counsel for Jackson Morgan argues that "once the search and seizure claim has been decided against the state, no justification exists for another review of the issue by the federal courts," and that "it is fundamentally unfair to fashion a rule whereby a defendant who loses a search and seizure claim in state court cannot relitigate in federal court even though such a procedure is permissible for a prosecutor."
 
 
 11
 This reasoning is faulty for several reasons. First, unlike a habeas corpus proceeding, there is no relitigation here. The state suppression proceedings are over, and the federal court did not reopen them. The validity of the state hearing is not at issue. Second, the rationale advanced for Stone v. Powell does not require invalidation of Elkins and Rios in the manner suggested by appellant. The Court's skepticism in Stone v. Powell about the deterrence from the application of the exclusionary rule in a federal habeas corpus proceeding cannot be advanced to support the exclusion in the federal courts of evidence seized by state officials when that evidence has been excluded in the state court. Third, while the Court in Stone v. Powell rejected arguments based upon "mistrust of the state courts as fair and competent forums for the adjudication of federal constitutional rights" (id. n.35 at 493-94, 96 S.Ct. at 3051), it has not sanctioned wholesale substitution of state court judgments for that of the federal courts where federal constitutional rights are concerned. We therefore adhere to the Elkins-Rios rule and examine the constitutional sufficiency of the state search warrant attacked by the appellant as violative of the Fourth Amendment guarantees under Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
 
 
 12
 The affidavit,[1] supporting the state search warrant, stated that the affiant, a police officer, received a tip from an unnamed informant that he had made several recent purchases of heroin at Jackson Morgan's residence, that, while there, the informant had observed heroin at the premises, that Jackson Morgan stored heroin in his residence and in his car. The informant also gave a detailed description of the residence, the car, and some personal and family attributes of Jackson Morgan. The affidavit further averred that the information regarding the residence, the car, and personal and family attributes were personally verified by the affiant. The affiant also conducted an inquiry into Jackson Morgan's record and reputation as a narcotics dealer. The inquiry showed that Jackson Morgan was known as a narcotics dealer to three other police officers, was arrested on a narcotics charge on February 17, 1975, and was under active investigation by two narcotics officers on May 19 and June 25, 1975.
 
 
 13
 To be constitutionally sufficient, an affidavit based solely upon an unnamed informer's tip must meet the Aguilar-Spinelli two-prong test: (1) The affidavit must set forth some underlying circumstances which reveal the source of the informer's information pertaining to the criminal activity, and (2) the affidavit must present sufficient objective evidence to enable the magistrate to conclude that the unnamed informant is credible or that his information is reliable.
 
 
 14
 It is evident that the first prong of the Aguilar-Spinelli test is met here as the informant was relating his own personal observations and participation in the alleged criminal activity. There is no direct objective evidence in the affidavit on the credibility and the reliability of the unnamed informant. The second prong of the Aguilar-Spinelli test can, however, be met by circumstantial evidence on the trustworthiness of the tip. (United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).) In Draper, independent corroboration of the informant's tip by a law enforcement officer was held to be sufficient circumstantial evidence adequate to give credence to the tip. The affiant here had independently corroborated the informer's tip to the fullest possible extent other than the fact that heroin was stored at the premises. Moreover, compared to Draper, the information that had been corroborated here appeared to have a closer nexus to the alleged criminal activity and was given by a person more directly involved in the alleged criminal activity. Both these factors were deemed important by a plurality of the Court in Harris in weighing the probative value of the circumstantial evidence. Compared to Harris, the factual basis for the defendant's reputation in the alleged criminal activity here is more substantial and less dated. In Harris, the informant's tip was not independently corroborated at all. To be sure, it would have been better if the police arrest record and the investigative reports about the appellant had been made part of the warrant application. Viewed in the light of the Draper-Harris decisions, however, the affidavit here has met the constitutional minimum.II
 
 
 15
 Appellant Garrett also challenged the constitutional sufficiency of the Pasco search warrant on the ground that it was signed by a state judge of record, rather than a federal magistrate, that it failed to designate the name of a federal magistrate to whom the search warrant return was to be made, that it did not show probable cause, and that it failed to particularly describe the things to be seized. These contentions have no merit. The underlying facts of the alleged criminal activity in Pasco were personally observed by many law enforcement officers over a continuous period of surveillance. These facts, as set forth in the supporting affidavit, were more than sufficient to establish probable cause. The description in the warrant of the items to be seized is sufficiently specific to meet the commands of the Fourth Amendment. (Quigg v. Estelle, 492 F.2d 343 (9th Cir. 1974).) The issuance of a federal warrant by a judge of a state court of record is expressly authorized by Federal Rules of Criminal Procedure 41(a). Since the search warrant return was in fact made, within two days of the search, to a federal magistrate, no reversible error was committed. (United States v. Burke, 517 F.2d 377 (2d Cir. 1975).)
 
 III
 
 16
 The appellants contend that the district court committed various errors in admitting prejudicial evidence, and that there was insufficient evidence to support the jury verdict. These contentions do not present colorable claims unless there is no conspiracy. The Government, however, presented ample evidence of a conspiracy to distribute heroin at the trial and of each appellant's connection to it. Several sales of heroin were made by Kinsey, who was observed to obtain the heroin from Garrett's home in Pasco. Mary Ethel Morgan was seen in Garrett's home during one purchase while Garrett was away in Alaska. Marked government money used in the purchase of heroin in Pasco, Washington, was found in Jackson Morgan's residence in Los Angeles. Documents and records seized from the Garrett residence evidenced a scheme of distribution by the appellants. With this evidence of a conspiracy to distribute heroin, it was not error to admit, under the co-conspirator hearsay exception, the extrajudicial statements of Kinsey at the joint trial, further implicating all the appellants in the conspiracy. (Carbo v. United States, 314 F.2d 718, 735-38 (9th Cir. 1963); Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949).) Taken together, the evidence is more than sufficient to support the convictions.
 
 IV
 
 17
 The appellants contend further that the district court should have severed their joint trial because the court was informed by Mary Ethel Morgan that her husband, Jackson Morgan, would exercise, if necessary, marital privilege to prevent her from testifying. The district court was not informed of the nature of her purported testimony. Mary Ethel Morgan did not testify at trial, nor did she attempt to. Logically extended, the appellants' contentions would mean that a joint trial involving the husband and wife as codefendants can only be conducted with their consent. This is simply not the law. "The mere joint trial of husband and wife does not require severance where, as here, the Government did not introduce the statement of one to incriminate the other." (United States v. Figueroa-Paz, 468 F.2d 1055, 1057 (9th Cir. 1972).)
 
 V
 
 18
 Appellant Jackson Morgan received an enhanced sentence as a second offender pursuant to 21 U.S.C. § 841(b)(1)(A). Prior to trial, the Government filed an information with the district court stating in writing the prior convictions to be relied upon as required by 21 U.S.C. § 851(a)(1). The district court did not comply with 21 U.S.C. § 851(b), which requires the district court "after conviction but before pronouncement of sentence (to) inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and (to) inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence."
 
 
 19
 We agree with the Fifth Circuit that failure to comply with Section 851(b) renders the sentence illegal. (United States v. Cevallos, 538 F.2d 1122 (5th Cir. 1976).) As Cevallos explains, "unless the Judge complies with § 851(b) in imposing an enhanced sentence, the legal requirements for the lawful imposition of an enhanced sentence have not been met, and thus the enhanced sentence in fact exceeds the normal statutory maximum which the Judge is otherwise authorized to impose." (Id. at 1128.)
 
 
 20
 We do not discount the burden that compliance with Section 851(b) places on seriously backlogged district courts, but we also recognize that the "quantum jump in the severity of sentence" (United States v. Cevallos, supra, 538 F.2d at 1128) that Congress has forced district courts to impose under this enhancement statute means that a defendant faces draconian penalties if he has any valid priors. Moreover, the statute forecloses collateral attack on the validity of his priors for enhancement purposes if the defendant has been given the appropriate opportunity to challenge them under this statutory scheme. We therefore vacate Jackson Morgan's sentence and remand for resentencing in full compliance with the procedures of Section 851(b).
 
 
 21
 We have considered the remaining contentions of the parties, and we have concluded that they have insufficient merit to require comment.
 
 
 22
 The convictions are affirmed. Jackson Morgan's sentence is vacated, and his cause is remanded to the district court for resentencing.
 
 
 
 *
 Honorable David W. Williams, United States District Judge, Central District of California, sitting by designation
 
 
 [1]
 "I am John M. Harrington, I am an officer of the Los Angeles Police Department with grade of Investigator I. My serial number is 13101. I am presently assigned to Central Operations Division as a narcotic investigator. I have been a police officer for over 81/2 years and in my present assignment for 20 months. During my assignment I have conducted and participated in numerous investigations and arrests involving narcotic sales and trafficing (sic ) of narcotics. In the course of my assignment I have become familiar with the manner in which narcotics are transported, packaged and sold in the county of Los Angeles. I have also qualified as a Narcotics Expert in Municipal and Superior Courts in excess of 200 times
 "During the latter part of October 1975, your Affiant received information from Informant whom I had reason to believe was reliable. The informant told me the following: A male, Negro known to informant as Jack Morgan described as a male, Negro, grey, brown, 5-11, 250, 55 years old, was selling large quantities of heroin, i. e., $50 raw 1/4, 1/2 and full pieces, out of his residency 4048 Gelber Place # 7, Los Angeles. Informant states suspect Morgan keeps his stash in his apartment, a storage room, car port and automobile. Informant described suspect's automobile as 1968/69 Cadillac, 4 door, blu and that suspect parks vehicle either on street or in carport. Informant states suspect lives in apartment # 7 with wife Ethyl and that suspect and wife are not users. Informant went on to state that he has purchased heroin from suspect several times in past 12 days and every time informant has been at suspects location, the informant has seen heroin. The informant is a heroin user.
 "On October 21, 1975, 1430 hours, your Affiant went to 4048 Gelber Place to conduct a surveillance. At location your Affiant observed a 1968 Cadillac, blu, California License # VQN771. Vehicle parked at curb in front of location and a male, Negro, 5-11, 250, grey, brown, 55 years old, exited vehicle and entered apartment complex 4048 Gelber Place. Suspect entered apartment # 7. Your Affiant observed suspect to have a noticable (sic ) limp.
 "Your Affiant returned to Central Narcotics where he ran license VQN771, it returned and showed a 1968 Cadillac, registered owner Morgan, Jackson, 4048 Gelber Place # 7, Los Angeles. Your Affiant ran suspect Morgan for traffic history; the return showed driver's license # N4554844, date of birth 1-27-20, Morgan, Jackson, 4048 Gelber Place # 7, Los Angeles. Affiant then ran suspect Morgan for criminal record; the return showed prior narcotics arrests last being 2-17-75 by 77th Street Division Narcotics. Suspect was arrested from 4048 Gelber Place # 7 for 11351 H&S, possession of heroin for sale with a large quantity of heroin seized. Your Affiant contacted Investigator III Magga of Administrative Narcotics who informed your Affiant that suspect Morgan was a trafficer (sic ) of large quantities of heroin from 4048 Gelber Place # 7. Suspect Morgan lived with his wife Mary Ethyl and that he was a male, Negro, grey, brown, 5-11, 250, 55 years old, and walked with a limp. Vehicle described as 1968 Cadillac, 4 door, blu, California License VQN771. Investigator III Magga showed several photos to Affiant who identified suspect Morgan. Affiant was also told that active investigations by Investigator Stanley and Fra of Administrative Narcotics Division were conducted on 5-19-75 and 6-25-75 on suspect Morgan.
 "From the foregoing investigation as above details (sic ) and from your Affiants experience, your Affiant concludes that Jackson (Jack) Morgan is presently dealing narcotics in the Los Angeles area. It is your Affiant's opinion, based on his experience, that 4048 Gelber Place # 7, Los Angeles, storage room, car port and described vehicle, there is presently contained narcotics and narcotic paraphernalia.
 "Your Affiant has confirmed all information received from informant finding information to be precise, direct and truthful.
 "Your Affiant requests that the warrant contain a directive that it may be served any time of the day or night, in that it is your Affiant's opinion based on training and experience as set out in the Affidavit that narcotic sales continue during the daytime and the nighttime hours and your Affiant believes if service of this warrant is delayed until the daytime hours the suspect will no longer be in possession of any contraband."