UNITED STATES of America, Appellee,

v.

Melvin JACKS, Appellant.

No. 80–1184.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 8, 1980.

Decided Nov. 10, 1980.

Kenneth Josephson, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Ronald L. Hall, Asst. Federal Public Defender, Western Dist. of Missouri, Kansas City, Mo., for appellant.

Before HENLEY and McMILLIAN, Circuit Judges, and VAN PELT,* District Judge.

PER CURIAM.

Melvin Jacks appeals from a judgment entered in the District Court[1] for the Western District of Missouri upon a jury verdict finding him guilty of aiding and abetting in the robbery of a federally insured bank in Kansas City, Missouri, on March 6, 1979.

Appellant was sentenced to a term of ten years imprisonment.

For reversal appellant argues that the district court erred in (1) failing to suppress his inculpatory statement of October 29, 1979, and (2) failing to suppress certain items seized during a consent search of the house of his friend, Ms. Kathryn Peterson. For the reasons discussed below, we affirm the judgment of the district court.

According to the government's theory of the case, appellant either participated in the bank robbery or aided and abetted in the bank robbery by helping another individual steal the getaway car. The getaway car had been stolen shortly before the bank robbery and was abandoned thereafter. Someone had forcibly removed the car's ignition switch cover and then inserted an object into the switch to start the ignition. Subsequent examination of the ignition switch revealed screw thread marks on the inside.

Within a couple of weeks after the robbery, circumstantial evidence led the investigating local police officers and FBI agents to consider appellant as a suspect. Ms. Lois Mattison, one of the bank tellers, selected appellant's photograph out of a photograph display as that of an individual who "resembled" one of the three bank robbers. Another witness saw three men sitting in a late model, brown, full-size car, possibly a Cadillac, parked in a parking lot across the street from the bank a short time before the robbery. The investigating officers knew appellant owned a 1972 brownish-gold Cadillac and suspected appellant's car was the one seen in the parking lot.

During the course of the investigation, it became known that appellant was living with Ms. Peterson, who was an employee of the Internal Revenue Service Center in Kansas City, Missouri. On March 21, 1979, the investigating officers decided to ask Ms. Peterson to consent to a police search of her house. The investigating officers made ar-

---

* The Honorable Robert Van Pelt, United States District Judge for the District of Nebraska, sitting by special designation.

1. The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

rangements to contact Ms. Peterson through Mr. Richard Baxter, the internal security officer at the IRS Center. The investigating officers interviewed Ms. Peterson at the IRS Center. Mr. Baxter was present at the beginning and during the final fifteen minutes of the interview. This interview occurred about 11 p. m. because Ms. Peterson was working a late hour shift. Following this interview, Ms. Peterson consented to the search and accompanied the officers to her house.

The investigating officers searched Ms. Peterson's house that night (actually during the early morning hours of March 22). Appellant was in the house and was directed to remain seated on a sofa. During the course of the search, the officers found a pistol, a rifle, a "dentpuller" (a tool used in the repair of automobiles), several empty cartridges, and several metal fragments. One of the officers discovered the dentpuller in a kitchen drawer and placed it on the kitchen table. At this point appellant made several incriminating remarks, specifically identifying the dentpuller as his property. Appellant further stated that he had been using it to work on Ms. Peterson's car.

Following the search, appellant was arrested, read the *Miranda* warnings, and taken to police headquarters for further questioning. During processing, the police found a "bait bill" from the bank in appellant's pocket. Appellant was taken to an interrogation room and again advised of his rights. Appellant then signed a waiver of rights form and was questioned. In the early afternoon, appellant appeared in a lineup and was tentatively identified as one of the bank robbers by Ms. Mattison. Later that afternoon, appellant was again advised of his rights, which he waived, and was further questioned. Appellant denied any involvement in the bank robbery and was subsequently released.

During the following months, the investigation continued. Laboratory analysis matched the screw attached to the dentpuller with the thread marks on the ignition switch cover of the getaway car. The police also found another witness who had seen a late model, full–size, brown car in the vicinity of the bank a few hours *after* the bank robbery.

Appellant was charged by indictment on October 26, 1979, with aiding and abetting in the robbery of a federally insured bank and was arrested on October 29, 1979. Appellant was advised of his rights and signed a waiver of rights form. Appellant was questioned for about two hours. A substantial part of the interrogation was taken up by a summary of the evidence against appellant in the possession of the police and a description of the seriousness of the robbery (one of the robbers had fired at a witness). The investigating officers then urged appellant to make a statement and noted that appellant's cooperation would be communicated to the Pre–Trial Services Agency and the sentencing court. However, the officers qualified this representation by stating that they were making no promises. Appellant then made an inculpatory statement. In this statement, which was read at the trial, appellant admitted that he had stolen the car, knew it was intended to be used in the bank robbery, denied actually participating in the bank robbery, but admitted sharing in the proceeds.

Following a pre–trial evidentiary hearing, the district court [2] denied appellant's motions to suppress certain statements. The district court concluded that appellant's inculpatory statement of October 29, 1979, had been made voluntarily and that Ms. Peterson had voluntarily consented to the search of her house on March 22, 1979. *United States v. Jacks*, No. 79–00143–01–CR–W–3 (W.D.Mo. Jan. 21, 1980) (order denying motion to suppress) (slip op. at 1 n. 1, 5). The district court further found that, although appellant was given the *Miranda* warnings at the time of the search on March 22, there was no evidence that appel-

2. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

lant affirmatively waived his rights. *Id.* at 2. Therefore, the district court suppressed any answers[3] given by appellant in response to police questions asked during the search. The district court, however, concluded that "[because appellant's] comments regarding the dentpuller were unsolicited, spontaneous remarks, those statements are admissible at trial, notwithstanding the absence of proof of a valid waiver of constitutional rights, because they do not constitute the product of interrogation." *Id.* at 3, *citing Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966).

Following a jury trial, appellant was found guilty and sentenced to ten years imprisonment. This appeal followed.

Appellant does not challenge the admissibility of the March 22 statements; however, appellant argues that his statement of October 29 was involuntary because it was induced by promises of leniency. Appellant argues that the police officers used psychological pressure to induce him to make the incriminating statement.

■ We have carefully reviewed the record and find no grounds for reversal. Appellant was repeatedly advised of his constitutional rights and signed a waiver of rights form. According to the testimony of the interrogating officers, most of the interrogation period was taken up by a summary of the case against appellant. The interrogating officers further testified that they made no threats or promises to appellant and, although they informed appellant that any cooperation on his part would be reported to the appropriate authority, they expressly cautioned appellant that they were making no promises of leniency.

Of course we recognize that this type of issue necessarily involves an assessment of the credibility of the witnesses by the district court. This is not, however, a case involving false and misleading promises by the police. In short, we do not find that the circumstances surrounding appellant's statements were coercive. In the present case, the interrogating officers "may have attempted to create a climate which would be conducive to extracting inculpatory information [by summarizing the case against appellant and by encouraging appellant to make a statement]. However, a fair reading of the whole record of [appellant's] interrogation supports the district court's finding that [appellant's] confession was voluntary." *United States v. Boyce*, 594 F.2d 1246, 1251 (9th Cir.), *cert. denied*, 444 U.S. 855, 100 S.Ct. 112, 62 L.Ed.2d 73 (1979). Further, "a statement that the accused's cooperation will be made known to the court [is not] a sufficient inducement so as to render a subsequent incriminating statement involuntary." *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir. 1978), *citing United States v. Barfield*, 507 F.2d 53 (5th Cir.), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1684, 44 L.Ed.2d 105 (1975); *United States v. Frazier*, 434 F.2d 994 (5th Cir. 1970).

Appellant next argues that Ms. Peterson's consent was involuntary because it was obtained by implied coercion. Appellant argues that Ms. Peterson believed her job with the IRS would be jeopardized if she failed to consent to the search and cooperate with the police investigation. Appellant emphasizes the presence and cooperation of IRS internal security officer Baxter with the investigating officers during their interview with Ms. Peterson on March 21.

■ A review of the record supports the district court's ruling that Ms. Peterson's consent was voluntary. *See generally Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Ms. Peterson testified that she was apprehensive during the interview but that she read, understood, and signed the consent form.

---

**3.** At the conclusion of the pre-trial evidentiary hearing, the government announced that it would not introduce the pistol found during the search nor any of appellant's statements about the pistol made in response to police questioning. As noted by the district court, appellant's statements about the pistol constituted the "answers" subject to the suppression order. *United States v. Jacks*, No. 79–00143–01–CR–W–3 (W.D.Mo. Jan. 21, 1980) (order denying suppression motion) (slip op. at 2, 3 n. 2).

Mr. Baxter testified that he assured Ms. Peterson that her job would not be in danger unless she lied to the investigating officers and told her that, in his opinion, as a government employee, she should cooperate with the investigation. Further, Ms. Peterson testified that she was not threatened and that no promises were made to her. While we in no way discount Ms. Peterson's understandable anxiety about her job, we conclude that under the present circumstances her consent was voluntary and not the product of coercion.

Accordingly, the judgment of the district court is affirmed.