**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Brian Donald HELDT,**
**Defendant-Appellant.**

**No. 83–1236.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 12, 1984.

Decided Oct. 26, 1984.

Rhonda L. Repp, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Francisco Leon, Tucson, Ariz., for defendant-appellant.

Before SNEED and FLETCHER, Circuit Judges, and KENYON,[*] District Judge.

FLETCHER, Circuit Judge:

Heldt appeals his convictions for transportation of a stolen vehicle and for transportation of stolen goods, both in interstate commerce in violation of 18 U.S.C. §§ 2312 & 2314 (1982). We reverse and remand for a new trial because of the admission at trial of statements taken in violation of Heldt's rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## FACTUAL BACKGROUND

Heldt was arrested by the Arizona state police in February 1983 after the police responded to a call to investigate possible fictitious license plates and registration for a truck tractor and trailer. Officer Williams placed Heldt under arrest upon learning that the serial number on the truck tractor matched that of a stolen vehicle. He gave Heldt *Miranda* warnings and Heldt invoked his right to remain silent.

Williams took Heldt to the county jail where he was booked and charged with two misdemeanors. Heldt pled guilty to one charge, not guilty to the other. Williams was told by the Denver police and the FBI that neither would charge Heldt. On the following day, Williams related this information to Heldt.

After Heldt's arraignment on the misdemeanor charges, FBI Agent Fish visited Heldt at jail. At trial Fish testified that he had told Williams that no federal prosecution was contemplated and that he did not inform Heldt otherwise until his interview with him was concluded. At the beginning of the interview, Fish read Heldt his *Miranda* rights and gave him a form that explained the rights, and contained a waiver to be signed by the interviewee.

Heldt testified that he told Fish he understood his rights but did not wish to waive them, that he refused to sign the waiver form, and that he told Fish he did not wish to answer questions. Fish testified that he told Heldt that he did not have to sign the waiver form but asked him if he would be willing to answer some questions anyway. Heldt agreed, but asserts that he was "confused and didn't know what was going on." The questioning continued for about three hours. At the conclusion of the interview, Fish told Heldt that federal charges would be brought after all.

On February 28, 1983, a federal complaint was filed against Heldt, charging one count of transportation of a stolen vehicle in interstate commerce in violation of 18 U.S.C. § 2312. Heldt was indicted by a grand jury on March 15, 1983.

On May 24, 1983, the grand jury returned a superseding indictment charging two counts. Count I was identical to the charge in the original indictment; Count II charged interstate transportation of stolen goods in violation of 18 U.S.C. § 2314 based on evidence that the trailer which was attached to the truck was also stolen. During the time between the two indictments, plea negotiations took place but failed.

The trial court denied a pretrial motion to suppress Heldt's admission to Fish, finding that Heldt had waived his rights. The court also denied motions to dismiss the indictments on the grounds of vindictive prosecution and violation of the Speedy Trial Act. At the end of the trial, the judge instructed the jury prior to closing arguments in violation of Fed.R.Crim.P. 30. Heldt asserts that statements made by the prosecution during closing argument gave the jury a misimpression of the standard of proof because of the trial court's refusal to instruct on the matter following argument.

[*] Hon. David V. Kenyon, United States District Judge for the Central District of California, sitting by designation.

## DISCUSSION

### I. *Heldt's* Miranda *Rights Were Violated.*

Whether we subject the district court's finding that Heldt waived his *Miranda* rights [1] to *de novo* review or employ a more limited standard, reviewing only to see whether the district court was clearly erroneous, the result is the same: [2] there was no valid waiver of *Miranda* rights and the district court's ruling must be reversed.

■ The government has the burden of proving that the defendant has knowingly and voluntarily waived his *Miranda* rights. *See North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). This burden is great. *Id.* We must indulge every reasonable presumption against waiver of fundamental constitutional rights. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *see also Butler*, 441 U.S. at 373, 99 S.Ct. at 1757.

■ Heldt's refusal to sign the printed waiver form casts initial doubt on any claim that he waived his *Miranda* right. Most persons attach considerable significance to the refusal to sign. By presenting a waiver form for signature, and then proceeding in the face of a refusal to ask if he may ask questions anyway, the police officer at best created an ambiguous situation. Heldt could reasonably have believed that he waived nothing because he had refused to sign. Additionally, there was testimony that Heldt, in addition to refusing to sign, indicated he did not wish to answer questions,[3] but that the officer exhorted him to do so anyway.[4]

---

1. The district court's order reads in full,

   IT IS ORDERED that defendant's Motion to Suppress and Objection to Admissions is DENIED.

   The defendant, no stranger to the criminal justice system, was initially advised of his rights by Officer Williams of the DPS. He then specifically declined to be interviewed and Officer Williams left. Three days later, Agent Fish of the FBI again advised him of his right and while the defendant declined to execute a written waiver of his rights, he did agree to speak with Agent Fish. This agreement was not coerced in any way and was fully and voluntarily entered into by the defendant.

   The court finds the facts in this case akin to those in *Michigan v. Mosely* [Mosley], 424 U.S. 596 [423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313] (1975). The defendant, having orally agreed to waive his rights to speak with the FBI agent, there is no basis upon which to suppress those statements.

2. Because we reach the same conclusion under even the more limited clearly erroneous standard, we need not decide whether *United States v. McConney*, 728 F.2d 1195 (9th Cir.1984) (en banc), requires us to review the question of *Miranda* waiver *de novo* as a mixed question of law and fact.

3. Heldt testified:
   Q. Okay. Did Agent Fish then ask you to sign it?
   A. I don't recall if he asked me to sign it or not.
   Q. What did he say to you?
   A. I believe he asked me if I understood them.
   Q. And what did you say?

   A. And to the best of my knowledge I said, "Yes, but I do not want to waive my rights." That's is why I didn't want to sign it, I wasn't sure what was going on yet.
   Q. What happened after that?
   A. He asked me if I would still like to answer some questions, and I said that I did not, I would just tell you what I know. Then he proceeded with the questioning, starting with my name and address and employment and how it came about that the truck was there, and then we went on step by step.

4. Fish testified:
   A. I indicated that I wanted to speak to him concerning his arrest at Morenci, Arizona on the 22nd. I wanted to ask him a few questions regarding how he came to be in custody of that semitractor-trailer.
   Q. Did you then advise him of his Miranda rights?
   A. At that point I would have advised him of his rights.
   Q. How did you go about doing that?
   A. I handed him the rights form, and to the best of my recollection I asked him to read the rights out loud back to me.
   Q. Did he read them out loud to you?
   A. Yes, ma'am.
   Q. After he read them, sir, what happened?
   A. He then indicated to me that he did not want to sign the Waiver of Rights portion of the form.
   Q. What did you do at that point?
   A. I told him he certainly did not have to sign the Waiver of Rights form; he was not forced to in any way. I then asked him, would he be willing to answer some of my questions anyway. He indicated that he would.

In *United States v. Boyce*, 594 F.2d 1246, 1250 (9th Cir.1979), we noted that "[u]nder some circumstances, declining to sign a *Miranda* waiver form will be an assertion of the right to silence ...." Our finding of waiver, however, was because the subsequent confession occurred during separate questioning several hours later and was preceded by the execution of a waiver form.[5] But in *United States v. Barnes*, 432 F.2d 89 (9th Cir.1970), we found that a defendant's refusal to sign a waiver was an indication that he did not wish to be questioned further. After this refusal, agents had confronted the defendants with the confession of a companion, at which point they confessed. We held that the subsequent confession was inadmissible under *Miranda*. *Accord Christian*, 571 F.2d at 69. Similarly, in *United States v. Wycoff*, 545 F.2d 679, 681 (9th Cir.1976), we assumed, without discussion, that a refusal to sign a waiver form was an assertion of a *Miranda* right.[6] *See also United States v. Jones*, 696 F.2d 479, 490 n. 13 (7th Cir.1982).

■ Under *Miranda* "[i]f the individual indicates in *any* manner, at any time prior or during questioning that he wishes to remain silent, the interrogation must close." *Miranda*, 384 U.S. at 473–74, 86 S.Ct. at 1627–28. Heldt's refusal to sign was such an indication and Agent Fish's subsequent exhortation to "answer questions anyway" was improper. *See Christian*, 571 F.2d at 69 and n. 8 (noting similarity to *Barnes*); *United States v. Nielsen*, 392 F.2d 849, 852–53 (7th Cir.1965).[7]

The fact that at the time Heldt was questioned, he believed, because of Williams' statements to him, that he would be charged with nothing beyond the misdemeanors supports our conclusion that the government did not sustain its burden of proof that a waiver occurred.

The First Circuit has suggested that a "prudent" course of action would be for the police officer to inform the accused that his failure to sign the waiver does not mean that his statements cannot be used against him. *United States v. Van Dusen*, 431 F.2d 1278, 1280 (1st Cir.1970). The court explained:

> In the delicate area of advising one of his rights, where testimony is often conflicting, the act of refusing to sign a waiver is concrete and indisputable. When such an act occurs, followed by a willingness to talk, this is a signal of some quirk of reasoning which may simply be a dislike of affixing a signature to any document but which may be more. It may indicate a serious misunderstanding on the part of the accused. In such a succession of events, we wish to make it clear to the courts and prosecutors in this circuit that the burden of persuasion resting on the prosecution measurably increases.

*Id.*

■ The First Circuit's suggestion is eminently sound. Investigating officers should clearly inform the accused that his failure to sign the waiver does not prevent

---

**5.** We wish to cast no doubt on the continued validity of *Boyce* under the facts of that case. *Boyce* is consistent with *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), in which the Supreme Court rejected the concept that questioning must permanently cease after the invocation of the right to remain silent, but allowed subsequent questioning "only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation." *Id.* at 106, 96 S.Ct. at 327.

The fact that in *Boyce* the subsequent interrogation was on the same crime is not important. The crucial factor, in our view, that established a valid waiver in this case, is the provision of a fresh set of warnings after the invocation of *Miranda* rights and waiver in light thereof. The rule that we articulate herein is designed to fulfill that interest.

**6.** We found the error harmless, however, on the facts of the case, as did the court in *United States v. Jones*, 696 F.2d 479 (7th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983).

**7.** Although we note some conflict between Fish's and Heldt's testimony, both agree that Heldt refused to sign the waiver form and that Fish asked Heldt to answer questions after that refusal.

statements he makes from being used against him.[8]

## II. *Speedy Trial Act.*

■ Heldt asserts that his second indictment violated the Speedy Trial Act, 28 U.S.C. § 3161 (1982), because it was handed down more than thirty days after the complaint. The district court denied Heldt's motion to strike the superseding indictment. We review the district court's interpretation of the Speedy Trial Act de novo. *United States v. Mehrmanesh*, 689 F.2d 822, 827 (9th Cir.1982).

On May 24, 1983 the grand jury returned a superseding indictment charging two counts. Count I was identical to the charge in the original indictment. Count II charged interstate transportation of stolen goods (the trailer attached to the truck tractor).

Heldt argues violation of section 3161(b), which provides in relevant part:

Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual

was arrested or served with a summons in connection with such charges.

18 U.S.C. § 3161(b) (1982).

■ Heldt argues that the indictment on Count II must be dismissed because it was "in connection with" Count I, the charge upon which he was arrested, and was not returned within 30 days of the complaint. The government argues that the Speedy Trial Act does not apply to superseding indictments and, in any event, it was not "in connection with" the charge upon which he was arrested.

Heldt's argument must fail under our recent interpretation of the Speedy Trial Act in *United States v. Pollock*, 726 F.2d 1456 (9th Cir.1984).[9] In *Pollock*, the defendant was originally arrested and held on a single count of conspiracy to manufacture and distribute methamphetamine. One hundred and nineteen days later he was indicted on 50 counts "some of which involved offenses based on the same criminal episode, but most of which specified separate offenses discovered during the grand jury's investigation." At 1462. He was convicted on thirty-seven counts, only one of which was the one for which he was arrested. We dismissed the one count

---

**8.** Heldt argues that his right to counsel under the Sixth Amendment under *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1963), was violated by Agent Fish's questioning. This argument is not clearly articulated and we decline to reach it in light of our holding that Heldt's *Miranda* rights were violated.

**9.** The government relies on *United States v. McCown*, 711 F.2d 1441 (9th Cir.1982), for the proposition that superseding indictments do not fall under the Speedy Trial Act. Such a reading of *McCown* is overbroad and improper.

In *McCown* the defendant was originally indicted on one count of possession of cocaine with intent to distribute. Over a month later, the grand jury returned a seventeen count indictment, count seventeen of which was identical to the single count in the first indictment. McCown sought to dismiss only count seventeen on Speedy Trial Act grounds—the remainder of the counts were severed and not before the court in that case.

The court relied on the fact that section 3162(a)(1) speaks of "no indictment" being filed. Because the first indictment was filed within the

thirty-day period, no violation of the Act occurred. The court stressed, however, that its rationale was based on the fact that the indictments were identical:

Because the [first] indictment and Count 17 of the [second] indictment were identical, McCown was on notice of the charges against him since [the date of the first indictment]. Also, the identical language of the two charges makes it implausible that McCown could have been confused about the actual charges against him. . . .

*McCown*, 711 F.2d at 1448. *Accord United States v. Mitchell*, 723 F.2d 1040, 1045 (1st Cir. 1983).

An unrelated charge can be brought at any time. *See, e.g., United States v. Mulherin*, 521 F.Supp. 824, 827 (S.D.Ga.1981) (original indictment on conspiracy offense, subsequent indictment on substantive offense), *reconsid. denied*, 529 F.Supp. 916, *aff'd*, 710 F.2d 731 (11th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1305, 79 L.Ed.2d 703 (1984). The *McCown* decision is limited to the holding that Count I of the superseding indictment need not be dismissed if it is identical to the original indictment. That issue is not in dispute in this case.

upon which he was arrested but upheld the other thirty-six.[10]

The *Pollock* opinion focuses on section 3162(a)(1), which provides for the dismissal of untimely indictments:

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) of this chapter, *such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.*

18 U.S.C. § 3162(a)(1) (1982) (emphasis added). The legislative history of the Act illustrates that Congress considered and rejected language which would restrict reprosecution of conduct "arising from the same criminal episode" or offenses which were "known or reasonably should have been known." At 1463. Charges not included in the original complaint are not covered by the Act and are restricted only by "the applicable statute of limitations, the due process clause of the fifth amendment, the general sixth amendment right to a speedy trial, and the power of the court to dismiss a case in its entirety" under Rule 48(b). At 1463 n. 11. *But see United States v. Mitchell,* 723 F.2d at 1040, 1045 (1st Cir. 1983) ("If the superseding indictment in some way changed the original charges [the court might find a Speedy Trial Act violation]").

In this case the complaint charged transporting a motor vehicle in interstate commerce. A truck trailer is not a motor vehicle. *United States v. Lofty,* 455 F.2d 506 (4th Cir.1972); 18 U.S.C. § 2311 (1982). The only count that could be dismissed for violation of the Speedy Trial Act is the motor vehicle count. *See Pollock.* However, since Heldt was indicted within thirty days on the complaint (the motor vehicle count), and the second indictment was for a count not charged in the complaint, neither count need be dismissed.

10. *Pollock* is not a direct precedent in this case because the court stated that "most" of the extra counts were separate offenses. We cannot know whether any of the 36 retained counts

## III. *Vindictive Prosecution.*

Heldt asserts that the government sought the superseding indictment in retaliation for Heldt's refusal to agree to a plea bargain. The government responds that the delay was caused by the prosecutor's marriage and the need to investigate the case. The district court accepted the government's explanation. Because Heldt has not met his burden of coming forward with evidence, we do not reach the adequacy of the government's justification.

### A. *Burden of Proof.*

■ The defendant who alleges vindictive prosecution has the burden of making a showing of an appearance of vindictiveness. *United States v. Burt,* 619 F.2d 831, 836 (9th Cir.1980). The mere appearance of vindictiveness gives rise to a presumption of vindictive motive. *United States v. Griffin,* 617 F.2d 1342, 1347 (9th Cir.), *cert. denied,* 449 U.S. 863, 101 S.Ct. 167, 66 L.Ed.2d 80 (1980). The burden then shifts to the prosecution to show that its decisions were justified. *Id.* The prosecution has a "heavy burden ... to justify the increase in severity of the alleged charges whenever it has the opportunity to reindict the accused because the accused has exercised a procedural right." *Id.* at 1346; *United States v. Ruesga-Martinez,* 534 F.2d 1367, 1369 (9th Cir.1976).

### B. *Heldt Has Not Met His Burden.*

■ Assuming that Heldt's allegations are true, the conduct he alleges does not constitute vindictive prosecution. In *United States v. Allsup,* 573 F.2d 1141 (9th Cir.), *cert. denied,* 436 U.S. 961, 98 S.Ct. 3081, 57 L.Ed.2d 1128 (1978), we held that bringing additional charges because the defendant was not willing to plea bargain was permissible prosecutorial discretion. *See* 573 F.2d at 1143. *See also Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Here, Heldt

were "in connection with" the first count. However, the rationale of the opinion and the dicta in footnote 11 require a similar result here.

was willing to plea bargain; the problem was that the parties could not reach agreement.

Although a claim of vindictive prosecution might be successful in a case where it was proved that an increase in charges was in response to a motion to suppress, Heldt's assertions are too vague to sustain his burden of coming forward with some evidence to lend substance to his claim of vindictiveness. We affirm the district court's ruling on this issue.

## IV. CONCLUSION.

In light of our disposition we need not reach other claimed errors. We reverse the district court's order admitting Heldt's statements that were taken in violation of his rights under *Miranda* and remand for a new trial.

We affirm the district court's refusal to dismiss the superseding indictments on grounds of the Speedy Trial Act and vindictive prosecution. Heldt may be retried on both charges.

AFFIRMED in part, REVERSED in part, and REMANDED.