940 F.2d 653
 33 Fed. R. Evid. Serv. 962
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ivy Leo CHERRY, Defendant-Appellant.
 No. 90-5784.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 9, 1991.
Decided Aug. 12, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Herbert F. Murray, Senior District Judge. (CR-89-201-HM)
 Michael T. CitaraManis, Assistant Federal Public Defender, Baltimore, Md., (Argued), for appellant; Fred Warren Bennett, Federal Public Defender, Baltimore, Md., on brief. Jamie M. Bennett, Assistant United States Attorney, Baltimore, Md., (Argued), for appellee; Breckenridge L. Willcox, United States Attorney, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Criminal defendant Ivy Leo Cherry appeals his convictions for possession of a firearm by a felon, 18 U.S.C. Sec. 922(g); possession of heroin with intent to distribute, 21 U.S.C. Sec. 841(a)(1); and using and carrying a firearm in connection with a drug trafficking crime, 18 U.S.C. Sec. 924(c). Cherry raises six issues on appeal: (1) whether the trial court erred in deciding to exclude the testimony of a police officer regarding the use of "drop pieces"; (2) whether the trial court appropriately declined to admit the prior suppression hearing testimony of a witness; (3) whether the trial court properly quashed a defense subpoena duces tecum; (4) whether the prosecution's rebuttal argument was proper; (5) whether the trial court's denial of the motion to suppress evidence was proper; (6) and whether the trial court properly denied Cherry's motion to dismiss counts two and three of the superseding indictment. Cherry's claims are not persuasive; accordingly, his convictions on all the counts are affirmed.
 
 I.
 
 2
 On May 30, 1989, Cherry was indicted by the Grand Jury for the District of Maryland in a one count indictment charging him with possession of a firearm by a felon, 18 U.S.C. Sec. 922(g). On October 4, 1990, a superseding indictment was returned in which two additional charges were brought against Cherry. In the latter indictment, Cherry was charged in count two with possession of heroin with intent to distribute and in count three with using and carrying a firearm in connection with a drug trafficking crime. The trial began on December 5, 1989; on December 13, 1989, the jury returned a verdict of guilty on all counts, and on March 9, 1990, Cherry was sentenced. This appeal followed thereafter.
 
 II.
 
 3
 The convictions arise from an incident involving Cherry and a Baltimore City Police Officer, Stephen Pagotto, during the early morning of December 29, 1988. The government describes the incident as an altercation between the two men stemming from Cherry pulling a gun on the officer with Pagotto defending himself. Cherry, in contrast, describes the incident as an unprovoked attack by Pagotto. While the jury apparently credited Pagotto's description as true, a recounting of the conflicting testimony is necessary for a discussion of the issues.
 
 A.
 
 4
 Pagotto testified that while on patrol at 4:00 a.m. in a high crime area in Baltimore, he noticed Cherry speaking with a known drug dealer. Deciding to find out what Cherry was doing in the area at that time of the morning, Pagotto walked up to him to ask him for identification. Pagotto stated, "Excuse me sir, may I have a moment of your time?" or words to that effect. As Cherry turned he reached into his rear waistband, pulled out a .22 caliber revolver and pointed it at Pagotto. The police officer swung his nightstick with his left hand and knocked the gun to the ground. In the battle that ensued, Pagotto picked up a rock and struck the defendant twice on the head. The rock blows subdued Cherry. Pagotto then called on his radio for assistance. Officers Steven Lukasik and Jerry Weaver responded to the "Signal 13"* call for assistance. When they arrived, Pagotto told Lukasik that Cherry had pulled and pointed a gun at him.
 
 B.
 
 5
 Lukasik testified that he handcuffed and searched Cherry. During the search ten glassine bags containing white powder and three bags containing residue were recovered from Cherry. The substance in the bags was later identified as heroin. Moreover, Weaver retrieved the gun from the ground.
 
 C.
 
 6
 Cherry relied on the testimony of three witnesses that contrasted somewhat to that of the officers. Mrs. Elaine Baker lived with her retarded daughter Elaine near the scene of the altercation. Mrs. Baker testified that in December of 1988, she was staring out of her window. She noticed a young man walk up the street, followed by a police officer. Thereafter the officer grabbed him. The man yelled "don't hit me. I haven't done anything. Don't hit me...." Mrs. Baker stated that the officer hit the man with a stick about 20 times. Afterwards, the officer called on his "walkie talkie," thereafter more police arrived. Mrs. Baker stated that the man did not have a gun nor did she see him extend his arm towards the officer.
 
 
 7
 The younger Ms. Elaine Baker testified that, while looking across the street from her building, she saw a white police officer beating a young man at about 5:00 a.m. Moreover, she testified that the man did not point a gun or anything else at the officer. Unlike her mother, Ms. Elaine Baker did not testify about the initial meeting of the two men. Thus, she did not say whether the young man pulled a gun.
 
 
 8
 Mr. Jr. Brown testified that while residing on the corner where the incident took place, he witnessed a young man being beaten by a police officer in December 1988 at about 2:00 a.m. He was looking out of his second floor apartment window. He described the officer as white and the man as "colored." Brown did not, however, witness the incident until after it had begun. Thus, he could not say whether the "colored" man had a gun that was knocked to the ground as Pagotto testified.
 
 II.
 A.
 
 9
 With respect to the first issue, Cherry argues that the court erred in excluding the testimony of officer Bushrod Hopkins. Cherry announced his intention to call Hopkins. At the request of the court, defense counsel proffered that Hopkins would testify as to conversations he allegedly had with Pagotto about the best use of "drop" or "back up" guns, extra weapons carried by the police to plant on defendants to incriminate them. Cherry averred that these conversations were admissible as evidence of Pagotto's intent, knowledge and motive under Federal Rule of Evidence 404(b). Moreover, Cherry contended that the testimony should be admitted as a prior inconsistent statement to impeach Pagotto's testimony that his knowledge of backup or drop pieces came from television. Finally, Cherry argues that the evidence is admissible under Federal Rule of Evidence 404(a)(2) as a "pertinent trait" of character of the victim of the crime.
 
 
 10
 Rule 404(a)(2) permits the "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused." Cherry's argument does not avail him for the simple reason that the rule does not have him in mind. Pagotto is not a victim. Cherry was charged with being a felon in possession of a weapon, possession of drugs, as well as carrying and using a weapon in connection with a drug trafficking crime. The victim in this illicit trinity is not Pagotto but rather the state. The Advisory Committee notes to Rule 404(a)(2) state that, "an accused may introduce pertinent evidence of the character of the victim, as in support of a claim of self-defense...." Had Cherry been convicted of assaulting a police officer and claimed self-defense, his argument would be plausible. As that is not the case, here, however, the argument is without merit.
 
 
 11
 Cherry's contention that the Hopkins testimony should have been admitted under Rule 404(b) as circumstantial evidence of Pagotto's knowledge, intent or plan to use a "drop gun" on him is also without merit. Under the rule, the evidence of "other crimes, wrongs, or acts ... may be admissible ... as proof of motive, opportunity, intent, preparation, plan, [or] knowledge." In order for the testimony to come within the scope of the rule, a "clear and logical connection between the earlier offense of misconduct and the case being tried" must be demonstrated. United States v. Biswell, 700 F.2d 1310, 1317-18 (10th Cir.1983). The tendered evidence of Cherry that ostensibly bears some clear and logical connection to this case does not, however, attest to the use of a drop gun. The proffered evidence is not an act but rather an awareness of acts demonstrated through an alleged conversation i.e. the use of drop guns by television actors.
 
 
 12
 Indeed, one of the cases cited by Cherry demonstrates why the evidence is inadmissible under Rule 404(b). In United States v. Aboumossallem, 726 F.2d 906 (2d Cir.1984), a criminal defendant charged with importing drugs and conspiracy to do the same sought to introduce evidence that several months prior to the arrest his coconspirator cousins had duped an innocent person into importing drugs. The Second Circuit held that such evidence, as part of a defense that the defendant was also duped and lacked knowledge, was admissible under Rule 404(b). 726 F.2d 906, 912. The defendant's evidence, unlike Cherry's proffered evidence, constituted a crime, wrong, or act. Evidence of Pagotto's awareness or knowledge of such acts performed by others is not admissible under Rule 404(b) to establish his knowledge of the alleged act of police misconduct at issue.
 
 
 13
 Finally, the Hopkins testimony is inadmissible under Rule 613(b). Cherry contends that the testimony of Hopkins would impeach the officer's testimony regarding drop guns. Under the rule:
 
 
 14
 [e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded the opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon....
 
 
 15
 The record does not reveal that Pagotto was given the opportunity to explain or deny the prior ostensibly inconsistent statement. He was never confronted with the supposedly contradictory statement. More to the point, however, the testimony of Hopkins is not inconsistent with that of Pagotto. Pagotto does not deny having had conversations indicating his awareness of drop pieces. As Hopkins' testimony would not demonstrate that Pagotto actually used such guns, the tendered testimony and Pagotto's statements are not contradictory.
 
 B.
 
 16
 The second error that Cherry alleges is that certain actions of the trial court precluded the defense from offering the testimony of Ms. Sandra Dennis. While Dennis was subpoenaed, she did not appear for the trial on December 11, 1989 as requested. Specifically, Cherry challenges both the court's decision not to issue a bench warrant for her arrest and its refusal to allow her suppression hearing testimony to be read as evidence.
 
 
 17
 Dennis was not subpoenaed until almost a week after the trial began. The request for the bench warrant came a day after she failed to appear in court on December 11, 1989. The request was denied by the court because to have granted it would have necessitated a continuance or at least a delay.
 
 
 18
 In reviewing this issue, we do so acknowledging the broad discretion of a trial judge in determining whether or not to grant a motion for continuance. United States v. Wilson, 721 F.2d 967, 972 (4th Cir.1983). Moreover, in reviewing the limitations on the taking of evidence we must determine whether Cherry was prevented from presenting his complete defense. United States v. Garman, 748 F.2d 218, 222 (4th Cir.1984). Given the fact that Cherry had three witnesses to the fight between him and Pagotto, the testimony of Dennis was cumulative. Considering the cumulative testimony and the fact that the witness was not subpoenaed until well into the trial, we cannot say the trial court abused its discretion by refusing to issue a bench warrant and grant the concomitant continuance. See, United States v. Poschwatta, 829 F.2d 1477, 1482-83 cert. denied, 484 U.S. 1064 (1988).
 
 C.
 
 19
 Cherry next avers that the trial court erred in quashing the subpoena for Pagotto's personnel files. Prior to trial, the court granted a request for a subpoena duces tecum, pursuant to Federal Rule of Criminal Procedure 17(c), for documents relating to complaints against Pagotto with the Internal Affairs Division of the Baltimore City Police Department. When the department refused to comply, Cherry filed a motion to compel production of the documents. The court refused to compel production.
 
 
 20
 The rationale for the trial court's ruling was that the information sought could interfere with ongoing investigations. The interference would occur if the names of witnesses who could testify in those investigations were revealed and they were compelled to also testify in the Cherry trial. Moreover, the trial court was concerned about the fact that witnesses could be called to testify about matters for which Pagotto could be exonerated. Finally, the court ruled that a subpoena was premature because the appropriate avenue for securing the documents was a request under the Maryland Public Information Act, Section 10-618. Accordingly, the judge urged Cherry to follow the procedures set forth in Maryland law and to renew his request for a subpoena if his request was denied under state law. There is no evidence that Cherry followed the state procedures, failed, and renewed the subpoena.
 
 
 21
 To withstand the government's motion to quash, Cherry had to demonstrate:
 
 
 22
 (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."
 
 
 23
 United States v. Nixon, 418 U.S. 683, 699-700 (1974) (footnote omitted) (citing United States v. Iozia, 13 F.R.D. 335, 338 (S.D.N.Y.1952). With respect to the second element, there is no evidence that Cherry exercised due diligence by seeking the documents through the state procedure. Having pointed out another door through which to obtain the documents, it cannot be said that the judge abused his discretion in not ushering Cherry through.
 
 
 24
 Cherry's subpoena fails under the first element of the Nixon test as well. The trial court inspected the documents in camera pursuant to Cherry's subsequent ex parte petition for the issuance of a subpoena under seal pursuant to Rule 17(c). The court specifically determined "that the documents in question are not relevant ... and therefore [it would] not order the production of these documents to defense counsel." In view of the facts that two of the cases against Pagotto were pending and the judge's determination that the documents were irrelevant, it cannot be said the trial court abused its discretion.
 
 D.
 
 25
 Cherry also claims that the prosecutor improperly referred to Cherry's prior felony conviction in his closing argument. A review of the closing arguments of Cherry and the government reveal that the latter's remarks were a mere rebuttal of the contention that the police officers planted the gun found on Cherry. The prosecutor in countering Cherry's contention stated:
 
 
 26
 Let's just think about the defense case for a minute in per spective ... [Pagotto] is going into his car and he is going to have a big night because he has got his gun, his drop piece.... So he starts at midnight but doesn't see anything good, nobody out there is a good enough target until 4:00 o'clock in the morning, and he sees that man, Ivy Leo Cherry, and he says ... this is the guy I'm going to get ... And he was really lucky that night ... because he didn't just pick anybody out, he picked out somebody who is a heroin user and just happens to have a prior felony conviction.
 
 
 27
 Cherry avers that the last statement infers that because he had a prior felony conviction, he was more likely to have committed the charged crimes. This interference, as Cherry accurately notes, is the type of "bad character" evidence that is excluded under Federal Rule of Evidence 404(b). A review of the whole of the pericope surrounding the statement, however, supports a different and permissible inference. The statement infers that the contention that Pagotto spent four hours looking for the perfect victim to plant his drop piece on was highly improbable under the circumstances. This claim is without merit.
 
 E.
 
 28
 Cherry also claims that the trial court's denial of his motion to suppress evidence should be reversed because the findings of fact supporting that denial are clearly erroneous. He argues that the gun and narcotics found were the product of an unlawful stop. Reviewing the record, we cannot conclude that the trial court's finding was indeed clearly erroneous.
 
 F.
 
 29
 The question of whether the trial court abused its discretion in denying Cherry's motion to dismiss two counts of the superseding indictment is readily resolved by a close examination of the Speedy Trial Act of 1974, 18 U.S.C. Secs. 3161, et seq. and the procedural history.
 
 
 30
 Originally, Cherry was charged in a one count indictment with possession of a firearm by a felon. Some four months later a superseding indictment was returned in which two more charges were brought against him: possession of heroin with intent to distribute and carrying a firearm in connection with a drug trafficking crime. Cherry now contends that the Speedy Trial Act requires the dismissal of the second and third counts because the superseding indictment was returned more than thirty days after he was placed in federal custody. The Act provides:
 
 
 31
 Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.
 
 
 32
 18 U.S.C. Sec. 3161(b).
 
 
 33
 The sanction for non-compliance with the preceding section is set forth by Sec. 3162(a)(1):
 
 
 34
 If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against the individual contained in such complaint shall be dismissed or otherwise dropped.
 
 
 35
 As is apparent from a plain reading of the statute, the sanction of dismissal set forth in the latter section is applicable only when the defendant is charged by complaint yet not indicted for the offense charged in the complaint within thirty days of the arrest. The dismissal sanction of Sec. 3162(a)(1) has been interpreted to require only the dismissal of the charge set forth in the complaint, as opposed to subsequent charges. United States v. Heldt, 745 F.2d 1275 (2d Cir.1985).
 
 
 36
 Heldt procedurally mirrors the instant case and reveals why Cherry's claim fails. In Heldt, the defendant was charged by complaint for transporting a stolen vehicle in interstate commerce. He was indicted for that offense within thirty days. Id., at 1276. Three months later, however, the grand jury returned a superseding indictment, adding a count charging the interstate transportation of stolen goods. Id. Heldt moved to dismiss the second count because it was not returned within thirty days of the filing of the complaint. Id. at 1279.
 
 
 37
 The Ninth Circuit rejected the same claim Cherry advances. The court stated:
 
 
 38
 Charges not included in the original complaint are not covered by the Act and are restricted only by the "the applicable statute of limitations, the due process clause of the fifth amendment, the general sixth amendment right to a speedy trial, and the power of the court to dismiss a case in its entirety" under Rule 48(b).
 
 
 39
 745 F.2d at 1280, citing United States v. Pollack, 726 F.2d 1455, 1463 n. 11 (9th Cir.1984). Based upon the reasoning of Heldt and the district court's memorandum and order, the motion to dismiss the second and third counts was properly denied.
 
 III.
 
 40
 For the reasons discussed above, the convictions on all counts are affirmed.
 
 
 41
 AFFIRMED.
 
 
 
 *
 Signal 13 is a police code indicating that an officer is in trouble and needs assistance