# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-KA-01012-SCT

*STANLEY ADAMS a/k/a STANLEY L. ADAMS*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/18/95 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RONALD W. LEWIS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIDRE McCRORY |
| DISTRICT ATTORNEY: | LAWRENCE L. LITTLE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 10/16/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/6/97 |

**BEFORE SULLIVAN, P.J., McRAE AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

On April 18, 1995, a jury in the Circuit Court of Lafayette County found Stanley Adams guilty of one count of uttering a forgery. The trial court sentenced Adams as an habitual offender to serve fifteen years in the Mississippi Department of Corrections without possibility of parole. After the trial court denied Adams' motion for j.n.o.v. or a new trial, Adams perfected his appeal to this Court, assigning as error the following issues:

> **I. WHETHER THE TRIAL COURT ERRED IN OVERRULING ADAMS' MOTION TO QUASH THE VENIRE AND DECLARE A MISTRIAL AFTER PREJUDICIAL COMMENTS WERE MADE BY TWO PROSPECTIVE JURORS.**

> **II. WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE**

**INCRIMINATING STATEMENTS MADE BY ADAMS TO POLICE OFFICERS AFTER HIS REFUSAL TO SIGN A WAIVER OF HIS *MIRANDA* RIGHTS.**

**III. WHETHER DURING CLOSING ARGUMENT THE PROSECUTOR IMPERMISSIBLY COMMENTED ON ADAMS' FAILURE TO TESTIFY.**

**IV. WHETHER ADAMS RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.**

**V. WHETHER THE CUMULATIVE ERROR IN THIS CASE REQUIRES A REVERSAL OF THE CONVICTION AND SENTENCE.**

## FACTS

At approximately 3:00 a.m. on September 27, 1994, Stanley Adams arrived at the Oxford residence of Teri Martin, a female acquaintance of his. According to Martin, Adams woke her up, told her that his friend's car had broken down, and asked to use her telephone. Martin told Adams that she would not let him use her phone, but after a brief argument, she agreed to drive him home.

The next morning, Martin's bank called to inform her that someone had tried to cash a check on her account.[1] When she went to her car to see if her checkbook was still there, the checkbook was gone. Martin then called the bank back and stopped payment on her checking account. It later became apparent that someone had cashed a second check for $25 on Martin's account at an Oxford convenience store known as "Sky Mart," but the bank refused to honor the check due to insufficient funds. Stanley Adams became a suspect based on eyewitness identification by two Sky Mart employees, Davery Bland and Deana Malone.

Davery Bland testified that he knew Stanley Adams because he had given Adams a ride home from Taco Bell a few weeks earlier. According to Bland, he was working at the cash register in Sky Mart one day when Adams came into the store, handed Bland a check, and asked Bland to cash it for him, which Bland did. Bland testified that Adams told him that the checking account was his mother's. Bland believed that Adams was given a ride to the store, but testified that Adams entered the store alone. Bland identified Martin's check, dated September 27, 1994 and made payable to Sky Mart, as the check that he cashed for Adams.

Deana Malone testified that she knew Stanley Adams because they had dated in the past. Malone, a cook at Sky Mart, testified that Adams entered the store one day with a man named Crouson. According to Malone, Adams asked for a pen, sat down to write a check, and then asked Bland to cash the check, telling Bland that the checking account was his sister's. Malone testified that she whispered to Bland not to cash the check because "that is not his sister," but that Bland cashed the check anyway. Malone testified that after Adams left the store, Malone called the telephone number on the check. According to Malone, Martin told her over the phone that she knew Adams, but that she had not given Adams permission to write the check. Malone also identified the check that Adams cashed at Sky Mart that day.

Oxford Police Officer Alvin Lewis took Adams into custody for questioning on September 28, 1994. Officer Lewis testified that he read to Adams his *Miranda* rights and a waiver of those rights, but that Adams refused to sign the waiver form. However, according to Officer Lewis, Adams "told me he

didn't want to sign it but he would talk to me." Officer Lewis testified that when he first asked Adams about the forged check, Adams said that he did not know Teri Martin, that he had never seen the check before, and that he was not at Sky Mart on September 27. According to Officer Lewis, when he again questioned Adams about the check after other questioning, Adams admitted that he knew Teri Martin, but stated that Martin had written the check, and that she had gone to Sky Mart and had given the check to Adams to cash because Adams knew the man behind the counter.

Adams was charged in the Circuit Court of Lafayette County with one count of uttering a forgery as an habitual offender. After the jury returned a verdict of guilty, the trial court sentenced Adams to serve fifteen years in the Mississippi Department of Corrections without possibility of parole or probation.

## DISCUSSION

We find reversible error in Issue II and find no merit in the others. Of the others, all but Issue III are not likely to recur on retrial, and thus it is unnecessary to discuss those issues in this opinion. Issues II and III are discussed below.

### WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE INCRIMINATING STATEMENTS MADE BY ADAMS TO POLICE OFFICERS AFTER HIS REFUSAL TO SIGN A WAIVER OF HIS *MIRANDA* RIGHTS.

On direct examination, Oxford Police Officer Alvin Lewis testified that on September 28, 1994, the day after the check was cashed at Sky Mart, he took Stanley Adams into custody for questioning. He testified that he read to Adams his *Miranda* rights and a waiver of those rights, but that Adams refused to sign the waiver form. When the prosecutor asked Officer Lewis what Adams stated in regard to the check cashed at Sky Mart, defense counsel raised an objection and approached the bench. No record was made of this bench conference. When the examination resumed, Officer Lewis testified that Adams "told me he didn't want to sign it but he would talk to me." Officer Lewis then related the conflicting and incriminating statements made by Adams during the ensuing interrogation. On cross-examination, Officer Lewis repeated that "he told me he wasn't going to sign the damn thing but he would talk to me." He admitted, however, that he had marked only "refused" on the waiver form, that he had not recorded Adams' interrogation, and that the police report of Adams' interrogation contained no indication that Adams had waived his *Miranda* rights.

The State then called Officer Ed Hood, who testified that he was present during Adams' interrogation. He testified that he knew Adams well, and that although it was not unusual in most cases, it was unusual for Adams to refuse to sign the waiver form. Officer Hood testified that after Adams refused to sign the waiver form, he agreed to talk to the officers. On cross-examination, Officer Hood testified that after Adams refused to sign the waiver form, Officer Lewis proceeded to ask Adams questions about the forged check. Officer Hood was the last witness called by the State, and the defense called no witnesses.

During the conference on jury instructions outside the presence of the jury, defense counsel called the court's attention to the aforementioned unrecorded bench conference, whereupon the court recognized the defense's objection to the admission of the statements made by Adams to police officers, which objection the court had overruled during the conference. Defense counsel restated the

objection, and once again the court overruled the objection.

Adams argues that because he refused to sign a waiver of his *Miranda* rights and there was insufficient evidence in the record that he knowingly and voluntarily initiated the ensuing conversation with the officers, the trial court erred in admitting the evidence. The State argues that because there is no record of the bench conference, this issue was not properly preserved for appeal, and that it is also substantively without merit.

Regarding the preservation of this issue for appeal, the trial court stated on the record:

> There was a conference at the bench concerning the waiver form and Mr. Balducci had objected to the statement of the defendant being received into evidence based upon the fact that he didn't sign a waiver form indicating that he had not consented to make a statement. The court overruled his motion and denied his request.

Because the record reflects that a contemporaneous objection was made to the admission of Adams' statements, we find that the issue was properly preserved for appeal.

Under the long-standing rule pronounced in *Agee v. State*, 185 So. 2d 671, 673 (Miss. 1966), when objection is made to the introduction of a confession, the accused is entitled to a preliminary hearing on the question of the admissibility of the confession, which hearing shall be conducted outside the presence of the jury. In the case *sub judice*, notwithstanding the defense objection, the trial judge did not conduct a suppression hearing regarding the statements made by Adams to police officers. Rather, he overruled the objection and admitted the statements despite evidence that Adams had refused to sign a waiver of his *Miranda* rights. Although the record does not reflect that defense counsel specifically requested a suppression hearing, it was incumbent upon the trial judge, upon timely defense objection, to conduct a hearing to determine whether Adams voluntarily waived his *Miranda* rights. *See Hall v. State*, 427 So. 2d 957, 960 (Miss. 1983) ("In considering questions such as this, the trial court should, of course, conduct a hearing before trial or, upon timely objection, during the course of trial, outside the presence of the jury"). The evidence in the record establishes the necessity of a remand for a suppression hearing, and we find that, for the reasons below, this case should be reversed and remanded with instructions to hold a suppression hearing on this issue.

Where the voluntariness of a confession has been put in issue, the State bears the heavy burden of proving voluntariness beyond a reasonable doubt. *Neal v. State*, 451 So. 2d 743, 753 (Miss. 1984). It is true that a defendant's refusal to sign a waiver does not constitute a *per se* invocation of his Fifth Amendment rights. *Mohr v. State*, 584 So. 2d 426, 429 (Miss. 1991). However, lest we render waiver forms altogether meaningless, the refusal to sign a waiver does have some significance which cannot be ignored.

In the case of *United States v. Heldt*, 745 F.2d 1275, 1276 (9th Cir. 1984), the defendant refused to sign a waiver of his *Miranda* rights, but agreed to answer questions anyway, during which interview he made incriminating statements. On appeal, the Ninth Circuit noted that every reasonable presumption against waiver of fundamental constitutional rights must be indulged. *Heldt*, 745 F.2d at 1277 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). "Heldt's refusal to sign the printed waiver form casts initial doubt on any claim that he waived his *Miranda* rights. Most persons attach considerable significance to the refusal to sign. . . . Heldt could reasonably have believed that he

waived nothing because he had refused to sign." *Heldt*, 745 F.2d at 1277. In finding the defendant's statements to have been obtained in violation of his *Miranda* rights, the court added that "[i]nvestigating officers should clearly inform the accused that his failure to sign the waiver does not prevent statements he makes from being used against him." *Id.* at 1278-79.

However, if the defendant is advised of his rights, the fact that he did not sign a waiver will not preclude statements he made after being advised of his rights from being admitted. *Ramseur v. State*, 368 So. 2d 842 (Miss. 1979). In *Ramseur* the defendant confessed to a murder and signed a written confession after being advised of his rights, and although he refused to sign a waiver, he stated that he would answer any questions asked. Ramseur ultimately signed a confession subsequent to being advised of his *Miranda* rights. This Court held that there was no indication that the defendant did not fully understand his constitutional rights and that the confessions were "free and voluntary." *Id.* at 845. Thus, his confession was admitted.

Similarly in *Thorson v. State*, 653 So. 2d 876 (Miss. 1994), this Court held that the defendant's rights had not been violated. In *Thorson* the defendant argued on appeal that his initial refusal to sign the waiver form constituted a demand for an attorney and that the incriminating statements thereafter obtained were therefore inadmissible, citing *Heldt*, *supra*. *Thorson*, 653 So. 2d at 887. In denying the assignment of error, we distinguished *Heldt* from the case at issue. Whereas in *Heldt* the interrogation continued uninterrupted when the accused refused to sign the waiver form, the defendant in *Thorson* was not questioned again until more than thirty-two hours later, and he was again advised of his rights before further questioning. *Thorson*, 653 So. 2d at 887.

In the case *sub judice*, as in *Heldt*, the interrogation continued uninterrupted after Adams refused to sign the waiver form, and he was not again advised of his rights before further questioning. Also, Officer Hood's testimony that it was unusual for Adams to refuse to sign the form suggests that Adams attached considerable significance to his refusal to sign, and that he could reasonably have believed that he had waived nothing because of such refusal. The waiver form itself shows only that Adams refused to sign and that Adams' interrogation was not recorded. The police report of the interrogation also indicates nothing about a voluntary waiver of *Miranda* rights. The only evidence indicating that Adams voluntarily waived his rights is the testimony by the two police officers, one of whose cross-examination testimony is not altogether consistent with his direct examination testimony. Furthermore, the officers never informed Adams that his failure to sign the waiver would not prevent his statements from being used against him. We hold that the evidence in this case casts sufficient doubt on Adams' voluntary waiver of his *Miranda* rights and that he is entitled to a suppression hearing on this issue.

### WHETHER DURING CLOSING ARGUMENT THE PROSECUTOR IMPERMISSIBLY COMMENTED ON ADAMS' FAILURE TO TESTIFY.

This issue warrants discussion only because it may arise on retrial. During his rebuttal closing argument, the prosecutor made the following comments:

> . . . just for the sake of argument let's agree with Mr. Balducci. They had a hot date. Where is the proof that Terry gave him her check with her permission and her blessing to go cash it? Where is the proof?

The record reflects that the defense never objected to these remarks.

Adams argues that the prosecutor's remarks constituted an impermissible comment on Adams' failure to testify, and that the lack of a contemporaneous objection does not bar this Court's consideration of such an issue. However, in the recent capital murder case of *Blue v. State*, 674 So. 2d 1184, 1213 (Miss. 1996), we stated:

> However, Blue is also correct in his assertion that this Court has routinely in past cases overlooked the procedural bar where the error is a comment on the defendant's failure to testify. *See Griffin v. State*, 557 So. 2d 542, 552 (Miss. 1990); *Livingston v. State*, 525 So. 2d 1300, 1306-07 (Miss. 1988); *Monroe v. State*, 515 So. 2d 860, 864 (Miss. 1987); *Griffin v. State*, 504 So. 2d 186, 193 (Miss. 1987); *Stringer v. State*, 500 So. 2d 928, 940 (Miss. 1986); *West v. State*, 485 So. 2d 681, 688 (Miss. 1985). We decline to continue such a procedure of routinely overlooking the application of the procedural bar where appropriate. The issue is procedurally barred.

Accordingly, this assignment of error is procedurally barred. In any event, the issue is substantively without merit.

When there is a question as to the prosecution's comment on the defendant's failure to testify, each case must be considered individually on the facts of that particular case. *Conway v. State*, 397 So. 2d 1095, 1099 (Miss. 1980), *cert. denied*, 449 U.S. 826 (1980); *Peterson v. State*, 357 So. 2d 113, 117 (Miss. 1978). We have held that it is not error to comment on the defense's failure to offer any evidence to contradict the State's evidence. *Lee v. State*, 435 So. 2d 674, 678 (Miss. 1983); *Conway*, 397 So. 2d at 1100 (citing *Johnson v. State*, 109 Miss. 622, 68 So. 917 (1915)). "The same is true with respect to a failure to produce testimony on any phase of the defense upon which the accused seeks to rely." *Conway*, 397 So. 2d at 1099 (quoting *Smith v. United States*, 234 F.2d 385 (5th Cir. 1956)).

Throughout his closing argument in the case *sub judice*, defense counsel made comments suggesting that Teri Martin and Stanley Adams were more than mere acquaintances, and implying that Martin had actually given Adams permission to cash her check at Sky Mart. The prosecutor's remark was nothing more than a comment on the defense' failure to produce evidence on this phase of the defense, and thus this assignment of error is without merit.

## CONCLUSION

We hold that the State failed to prove beyond a reasonable doubt that Adams voluntarily waived his *Miranda* rights after refusing to sign a waiver of those rights. Accordingly, we reverse the conviction and sentence and remand for a new trial with

instructions that the trial court hold a suppression hearing on the voluntariness of Adams' statements.

**REVERSED AND REMANDED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, ROBERTS AND SMITH, JJ., CONCUR.**

1. This was a different check from the one at issue in this case.