The UNITED STATES of America

v.

Larry Jerome COVINGTON, Jr.

Crim. No. 92–0507–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

April 8, 1993.

---

Marcus Davis, Asst. U.S. Atty., Alexandria, VA, for plaintiff.

Eric Michael Weight, Alexandria, VA, for defendant.

## SENTENCING MEMORANDUM

ELLIS, District Judge.

### Introduction

Defendant Larry Jerome Covington, Jr. is before the Court for sentencing after entering a plea of guilty on February 5, 1993, to Counts 1, 2 and 3 of a three count indictment charging the following: in Count 1 that defendant possessed cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); in Court 2 that defendant used a firearm in drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1); and in Count 3 that defendant, a felon, possessed a firearm, in violation of 18 U.S.C. § 922(g)(1).

The record reflects that on September 6, 1991, defendant was convicted in the Superior Court of the District of Columbia of attempted distribution of cocaine in violation of the District of Columbia Code §§ 33–541(a)(1) and 33–549. These violations were punishable by imprisonment for a term of up to 30 years.

On October 1, 1992, at Richmond Highway and Beacon Hill Road in Fairfax County, Virginia, defendant was stopped by a Fairfax County Police Officer. Within the automobile, under the carpet on the driver's side of the front seat, the officer found approximately 9.06 grams of cocaine base ("crack"), a Schedule II narcotic controlled substance. Approximately 6.76 grams of the crack were contained in a total of 81 small baggies. The remaining 2.30 grams was in the form of a single chunk of crack. The officer also found a government model, .45 caliber, Colt semi-automatic pistol, serial number 323192–C, which was loaded with seven (7) rounds of ammunition. This pistol was secreted under a fold-down arm rest in the center of the rear seat, and was within arm's reach of the driver's seat.

Following verbal and written *Miranda* warnings and defendant's waivers at the time of his arrest, defendant promptly acknowledged ownership of both the crack cocaine and the pistol. Defendant further admitted that he had purchased the crack cocaine earlier in the day in Washington, D.C. for $400, and had intended to resell it for $800. He represented the contents of the small baggies to be worth $10 each. In mitigation, defendant explained that he was disabled from gunshot wounds and sold drugs to support himself. He further told arresting officers that he acquired the pistol several weeks earlier from an associate in Washington, D.C., and that he carried it for protection, since he had been robbed and shot twice in the past.

At the time of this arrest, therefore, defendant promptly provided complete information to the government concerning his own involvement in the offense. The record does not explain why he waited until the eve of trial to enter a guilty plea. By that time the government had already expended the time, effort and resources to prepare for a jury trial.

### A. Uncontested Matters:

With the exception of the matters in Section B, the parties have no objection to the Presentence Investigation Report ("PSIR"). Accordingly, with these exceptions, the Court adopts the findings and conclusions of the PSIR as its findings and conclusions in this sentencing proceeding.

### B. Contested Matters:

■ Defendant raises two objections to the PSIR as finally amended. First defendant objects to the Probation Officer's decision to award him only two levels for acceptance of responsibility. He contends he should have received a three level reduction. *See* U.S.S.G. § 3E1.1(b). The Probation Officer's decision was based on the fact that defendant did not decide to plead guilty until

the day before trial. While § 3E1.1(b)(2) allows a further one level reduction based on the timeliness of a plea; that subsection is in the disjunctive with subsection (b)(1), which permits the award of a third level where, as here, defendant timely provides "complete information to the government concerning his own involvement in the offense." Accordingly, defendant's objection in this regard is SUSTAINED and the Court ORDERS that defendant receive three offense levels credit for acceptance of responsibility.

■ Defendant's second objection stems from the Probation Officer's determination that Counts 1 and 3 were not "closely-related" counts that should be grouped pursuant to U.S.S.G. § 3D1.2. This guideline section provides for grouping of "[a]ll counts involving substantially the same harm," a condition not present here. Defendant was convicted in Count 1 for possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841, and in Count 3 for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The harms flowing from drug trafficking clearly differ from those arising from a felon's unlawful possession of a firearm. These offenses invade separate and distinct societal interests. Given that Counts 1 and 3 involve different harms, these offenses are not "closely-related" and § 3D1.2 does not apply.

Defendant argues, however, that § 3D1.2(d) mandates the automatic grouping of Counts 1 and 3. This subsection provides, in pertinent part:

> Counts are grouped together if the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

Subsection 3D1.2(d) sets forth three categories of offenses: (i) offenses that are subject to grouping; (ii) offenses that are not subject to grouping; and (iii) offenses for which grouping decisions should be made on a case-by-case basis. Given that the offenses reflected in Counts 1 and 3 are included in the first category, defendant argues that § 3D1.2(d) requires that these counts be grouped for purposes of calculating his total offense level under § 3D1.4. This argument fails.

Contrary to defendant's arguments, § 3D1.2(d) does not mandate automatic grouping of offenses within the first category. Rather, the subsection lists in this category those offenses eligible for grouping provided they are of the "same general type." See § 3D1.2, *Application Note 6* ("Counts involving offenses to which different guidelines apply are grouped together under subsection·(d) if the offenses are of the same general type and otherwise meet the criteria for grouping under this subsection."); see also *United States v. Seligsohn*, 981 F.2d 1418 (3d Cir.1992); *United States v. Harper*, 972 F.2d 321 (11th Cir.1992). Typically, grouping under § 3D1.2(d) is warranted where defendants are convicted on numerous counts of the same or similar offenses—*e.g.*, conviction on five counts of mail fraud; or conviction on one count of selling PCP, one count of selling heroin, one count of selling cocaine. *Id.* But the drug offense for which defendant was convicted represents conduct that differs in essential respects from the offense conduct reflected in his conviction for unlawful possession of a firearm. Thus, while the offenses in Count 1 and Count 3 may be among those enumerated in subsection (d)'s first category, automatic grouping of these counts is inappropriate because they do not reflect offenses of the same general type.

This conclusion is supported by the policy purposes underlying § 3D1.2. This guideline section balances the competing interests in ensuring "incremental punishment for significant additional criminal conduct" on the one hand, and in preventing "multiple punishment for substantially identical offense conduct" on the other. *United States v. Toler*, 901 F.2d 399, 402 (4th Cir.1990). In this case, the Probation Officer's decision not to group Counts 1 and 3 does not lead to "multiple punishment" for the same offense conduct. Although·the drugs and the firearm that led to defendant's convictions were seized during the same incident, defendant

was convicted of violating two unrelated statutes that implicate separate and distinct harms and fundamentally different societal interests. *Cf. United States v. Pope,* 871 F.2d 506, 510 (5th Cir.1989) (holding that "thrust" of offense relating to unlawful possession of a firearm by a felon differed widely from an unregistered firearms offense). Grouping would inappropriately fail to give independent sentencing effect to each offense. As such, each offense should be considered separately in determining defendant's total offense history. Accordingly, defendant's objection is **OVERRULED.**

### C. *Conclusions:*

1. Defendant's adjusted offense level is 28.

2. Defendant's total offense level is 25.

3. Defendant's criminal history category is II.

4. The range of punishment under the Guidelines is sixty-three (63) to seventy-eight (78) months with at least four (4) years of supervised release.

5. The Guidelines range of fines is $12,500 to $125,000. An additional statutory special assessment of $50 applies to each felony count. 18 U.S.C. § 3013(a)(2)(A).

6. Probation is not authorized.

### D. *Motion for Departure:*

Not applicable.

### E. *Sentence Imposed:*

The Court commits defendant to the custody of the Bureau of Prisons for a period of sixty-three (63) months on Count 1 and sixty-three (63) months on Count 2, these sentences to run concurrently with one another. The Court also commits defendant to the custody of the Bureau of Prisons for a period of sixty (60) months on Count 2, this sentence to run consecutive to the sentences imposed on Counts 1 and 3. The total period of incarceration is one hundred twenty-three (123) months.

Upon release from confinement, defendant is to serve a period of four (4) years of supervised release. As a special condition of supervised release, the defendant must participate in and successfully complete a program of drug testing and rehabilitation at the direction and discretion of the Probation Office.

The Court imposes a $50 special assessment on each count, for a total of $150. 18 U.S.C. § 3013(a)(2)(A).

In light of the defendant's limited assets, the Court declines to impose a punitive fine or an additional fine to cover the costs of incarceration or supervised release.

### F. *Statement of Reasons for the Court's Sentence:*

The total sentence imposed adequately satisfies the Guidelines' goals relating to deterrence, retribution, and incapacitation. The consecutive sentence imposed with respect to Count 2 is statutorily mandated. 18 U.S.C. § 924.

The Court further notes that this sentence is the identical sentence it would have imposed on defendant had Counts 1 and 3 been grouped. In that event, the offense level total would have been 23 with a guideline range that includes sixty-three (63) months. That the Court would have imposed the same sentence with or without grouping reflects that sentencing, in the end, is an intensely intuitive or qualitative determination that eludes precise quantification. Judges must ultimately have a sense that the sentence is just because it fits the crime and adequately accommodates the goals of deterrence, retribution, and incapacitation insofar as each may be applicable to a particular case. While the guidelines appropriately reduce the potential for sentencing disparities, and thereby help achieve justice, they also import into the sentencing process an illusory quantitative precision that may result in a myopic focus that hinders judges from fashioning just and appropriate sentences.

The Court further ORDERS that this Sentencing Memorandum be appended to, and made a part of, the PSIR, pursuant to Rule 32(c)(3)(D), Fed.R.Crim.P.