**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Phoutone NANTHANSENG, a.k.a. Skinny, Defendant–Appellant.**

No. 99–30137.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 17, 2000

Filed Aug. 7, 2000

Peter A. Camiel, Mair, Camiel & Kovach, Seattle, WA, for defendant-appellant.

James M. Lord, Assistant U.S. Attorney, Seattle, WA, for plaintiff-appellee.

Before: REAVLEY,* CYNTHIA HOLCOMB HALL, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether two criminal counts of conspiracy, one relating to the distribution of illegal drugs and the other to the possession and sale of stolen firearms, may be grouped together for purposes of reducing the relevant offense level under the United States Sentencing Guidelines.

I

In February 1997, the owner of a gun store in East Wenatchee, Washington, was murdered and over one hundred firearms were stolen from his store. Authorities learned that the robbery had been perpetrated by a street gang that referred to itself as the "Oriental Troop." In hopes of locating the stolen firearms, a federal informant infiltrated the gang in April 1997 on the pretext of being interested in purchasing munitions. The informant succeeded in buying several firearms (at least one of which was stolen from the East

* The Honorable Thomas M. Reavley, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

Wenatchee gun store) but learned that members of the gang had transported the bulk of the stolen weapons to California to be sold. In the ensuing months, the informant and an associated Drug Enforcement Administration ("DEA") agent purchased hundreds of grams of crack cocaine from the gang members. In one such incident, the appellant, Phoutone Nanthanseng, delivered approximately 387 grams of crack cocaine to the DEA agent. A subsequent search of Nanthanseng's residence resulted in the discovery of one of the firearms stolen from the East Wenatchee gun store, and Nanthanseng was arrested.

Nanthanseng was indicted along with several of his fellow gang members in December 1998. He pleaded guilty to one count of conspiracy to distribute cocaine, crack, and marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and one count of conspiracy to possess and sell stolen firearms in violation of 18 U.S.C. § 371.

At sentencing, the district court calculated the offense level for the drug count to be 34 and the offense level for the firearms count to be 27. The district court declined to group Nanthanseng's offenses pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3D1.2 and instead calculated the adjusted combined offense level pursuant to U.S.S.G. § 3D1.4.

Nanthanseng timely appealed the district court's decision not to group his offenses pursuant to U.S.S.G. § 3D1.2.

## II

U.S.S.G. § 3D1.2 requires that "[a]ll counts involving substantially the same harm ... be grouped together into a single Group" for purposes of calculating the offense level pertaining to a multiple-count conviction. Pursuant to U.S.S.G. § 3D1.3, the offense level for an entire Group is simply the highest offense level pertaining

to any one of the Group's constituent offenses. When multiple counts fall outside of a single Group, however, U.S.S.G. § 3D1.4 requires the imposition of a discounted enhancement based on the number and severity of the counts that fall outside that Group.

Nanthanseng contends that his violations of drug and firearms statutes do, in fact, "involv[e] substantially the same harm," and that they thus should have been grouped together under § 3D1.2 to his advantage. If Nanthanseng is correct, the district court should have calculated his combined offense level pursuant to U.S.S.G. § 3D1.3 rather than § 3D1.4, and the relevant offense level should have been 34, the offense level pertaining to his drug count alone, rather than 35, the level on which the district court settled after adding a level for the firearms count.[1]

### A

There are four sets of criteria under which separate counts may be found to "involv[e] substantially the same harm" pursuant to U.S.S.G. § 3D1.2. The first, described in subsection (a) of that provision, requires that the "counts involve the same victim and the same act or transaction." U.S.S.G. § 3D1.2(a). "Counts are to be grouped together [under this subsection] when they represent essentially a single injury or are part of a single criminal episode or transaction involving the same victim." U.S.S.G. § 3D1.2 application note 3. The second set of criteria requires that the "counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." U.S.S.G. § 3D1.2(b). "This [subsection, however,] does not authorize the grouping of offenses that cannot be considered to represent essentially one composite harm." U.S.S.G. § 3D1.2

---

1. The relevant sentencing range for an offense level of 34 was 235 to 293 months; for an offense level of 35 it was 262 to 327 months. The district court ultimately applied a three-level downward adjustment for acceptance of

responsibility, however, and thus the relevant sentencing ranges were 168 to 210 months (if the offenses were grouped) and 188 to 235 months (if the offenses were not grouped).

application note 4. The third set of criteria requires that each of the counts "embod[y] conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." U.S.S.G. § 3D1.2(c); *see also United States v. Barron–Rivera*, 922 F.2d 549, 554 (9th Cir.1991) ("As unlawful entry into the country after deportation does not embody types of misconduct which 'typically occur in the course of' unlawful possession of firearms, all three counts cannot be grouped together."). The intent behind this subsection is to "prevent[ ] 'double counting' of offense behavior." U.S.S.G. § 3D1.2 application note 5. The final set of grouping criteria applies when the offense level for all of the counts "is determined on the basis of the total amount of harm or loss ... or some other measure of aggregate harm." U.S.S.G. § 3D1.2(d). This subsection applies when all of the relevant counts fall under a single rubric, such as multiple "drug offenses, firearms offenses, and other crimes where the guidelines are based primarily on quantity or contemplate continuing behavior." U.S.S.G. § 3D1.2 application note 6.

█ Nanthanseng does not assert that his drug– and firearm-conspiracy offenses can be grouped under the third or fourth sets of criteria. He appears to argue instead that the two counts should be grouped under either subsection (a) or subsection (b).[2]

## B

█ It is beyond dispute that subsections (a) and (b) both require that the counts to be grouped together "involve the same victim." U.S.S.G. § 3D1.2(a), (b). Nanthanseng alleges that his drug-conspiracy and his firearm-conspiracy did "involve[ ] the same victim" because they both victimized "society at large." Nanthanseng's conclusion does not follow from his premise. "[W]here society at large is the victim," the sentencing court must go on to determine whether "the societal *interests* that are harmed are *closely related.*" U.S.S.G. § 3D1.2 application note 2 (emphases added); *cf. Lopez*, 104 F.3d at 1150 ("Victimless crimes, such as those involved here, are treated as involving the same victim 'when the societal interests that are harmed are closely related.' "); *United States v. Kayfez*, 957 F.2d 677, 679 (9th Cir.1992) ("As the government points out, the societal interest invaded by each offense is very different.") (per curiam); *Barron–Rivera*, 922 F.2d at 555 ("Thus, the offenses should not be grouped if they pose threats to distinct and separate societal interests.").

Nanthanseng does not argue that the societal interest threatened by a conspiracy to distribute drugs and the societal interests threatened by a conspiracy to possess and sell stolen firearms are "closely related" for purposes of U.S.S.G. § 3D1.2, and it is plain in any event that they are not. The societal interest directly threatened by violations of drug laws such as 21 U.S.C. § 841(a)(1), to the violation of which Nanthanseng pleaded guilty as a result of his participation in a conspiracy to distribute cocaine, is the interest in "drug abuse prevention." *Barron–Rivera*, 922 F.2d at 555 (citing *United States v. Egson*, 897 F.2d 353, 354 (8th Cir.1990)). The societal interests most directly threatened by the possession and sale of stolen firearms are the interests in preventing theft of private property (which is induced by creating a market for stolen weapons) and, more importantly, in preventing the loss of "personal safety" resulting from the sorts of violent physical assault that are facilitated by the proliferation of unregistered weapons amongst an overwhelmingly criminal population. *Cf. Kayfez*, 957 F.2d at 679 ("Possession of an unregistered silencer threatens personal safety." (citing *United States v. Pope*, 871 F.2d 506, 510 (5th Cir.1989))). Society's interest in preventing drug abuse is, of course, wholly distinct from society's interests in prevent-

---

**2.** We review de novo the district court's refusal to group offenses in applying the Sentencing Guidelines. *See United States v. Lopez,* 104 F.3d 1149, 1150 (9th Cir.1997) (per curiam).

ing theft and physical assault. *Cf. United States v. Covington,* 818 F.Supp. 159, 161 (E.D.Va.1993) ("The harms flowing from drug trafficking clearly differ from those arising from a felon's unlawful possession of a firearm.").

The only authority on which Nanthanseng relies to establish that the relevant societal interests are closely related is our decision in *Lopez.* In that case, we held that the societal interests underlying prohibitions of drug trafficking and money laundering are so closely related that violations of those prohibitions could be grouped pursuant to U.S.S.G. § 3D1.2(b). *See* 104 F.3d at 1150–51. In doing so, however, we relied on the fact that the relevant legislative history revealed that "Congress's primary purposes in prohibiting money laundering were to add a weapon to the arsenal against drug trafficking and to combat organized crime." *Id.* at 1150.

Nanthanseng's offenses cannot be fairly characterized as analogously derivative. Nanthanseng has not referred us to, and we are unaware of, any grounds for concluding either that the distribution of illegal drugs has been criminalized in order to facilitate the enforcement of laws against the possession and sale of stolen firearms or that the possession and sale of stolen firearms has been criminalized in order to facilitate the enforcement of laws against the distribution of illegal drugs.

### III

Having failed to show that his offenses threatened closely related societal interests and thus constructively "involve[d] the same victim," as the relevant provisions of U.S.S.G. § 3D1.2 require, Nanthanseng has perforce failed to establish that the district court erred in refusing to group his offenses for the purpose of applying U.S.S.G. § 3D1.3.

AFFIRMED.