**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ricardo GASTELUM–ALMEIDA,
Defendant–Appellant.**

**No. 01–50426.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 2002.

Filed Aug. 15, 2002.

Yolanda M. Barrera, Arcadia, CA, for the defendant-appellant.

Andrea L. Russi, Assistant United States Attorney, Appeals Section, Los Angeles, CA, for the plaintiff-appellee.

Before: HUG, FARRIS and SILVERMAN, Circuit Judges.

## OPINION

FARRIS, Circuit Judge.

Ricardo Gastelum–Almeida held up a van that was smuggling aliens from Mexico to the United States, ejected the smugglers, and extorted fees from the aliens. He appeals his conviction and sentence for the charges related to these events and his status as an illegal alien found in the country following deportation. We affirm.

Gastelum–Almeida chose to go to trial on the six counts of the second superseding indictment:

1. Conspiracy to transport illegal aliens and to conceal, harbor, and shield them (18 U.S.C. § 371);

2. Transporting illegal aliens (8 U.S.C. § 1324(a)(1)(A)(ii));

3. Harboring and concealing illegal aliens (8 U.S.C. § 1324(a)(1)(A)(iii));

4. Being an illegal alien found in the United States following deportation (8 U.S.C. § 1326);
5. False statement (18 U.S.C. § 1001);
6. Carjacking (18 U.S.C. § 2119).

Gastelum–Almeida filed an *ex parte* application for a competency hearing, which the court granted. At the March 2001 competency hearing, the court was presented with the report of the defendant's expert, Dr. Manuel St. Martin, and three reports from the court-appointed expert, Dr. Ihle. The court accepted the experts' reports as their direct testimony and then allowed for cross-examination. The court found Gastelum–Almeida competent to stand trial.

In April 2001, after a four-day jury trial, Gastelum–Almeida was found guilty on all six counts of the second superseding indictment. The court sentenced him to 210 months.

## I. Competency to Stand Trial

### A. Standard of Review

■ A district court's determination that a defendant is competent to stand trial is reviewed for clear error. *See United States v. Timbana,* 222 F.3d 688, 700 (9th Cir.), *cert. denied,* 531 U.S. 1028, 121 S.Ct. 604, 148 L.Ed.2d 516 (2000).

### B. Analysis

Gastelum–Almeida argues that the district court clearly erred by finding him competent to stand trial. He is incorrect.

■ A defendant is competent to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam) (quoting Solicitor General's brief). "Whether a defendant is capable of understanding the proceedings and assisting counsel is dependent upon evidence of the defendant's irrational behavior, his demeanor in court, and any prior medical opinions on his competence." *Miles v. Stainer,* 108 F.3d 1109, 1112 (9th Cir.1997).

■ The district court's finding that Gastelum–Almeida was competent to stand trial is well-supported by the record. The court ordered that a psychological evaluation be done of the defendant by Dr. Ralph Ihle, the Chief Forensic Psychologist at the Metropolitan Detention Center. Dr. Ihle spent 12 hours evaluating Gastelum–Almeida, observed his interaction with other inmates, and consulted with unit officers as well as medical personnel regarding his behavior. Dr. Ihle concluded that Gastelum–Almeida "is angry about the charges, the potential sentence he may receive if convicted, and toward those he views as not helping his situation, but there is no objective evidence to support his suffering from a major mental disorder that impairs his present ability to consult with his lawyer with a reasonable degree of rational understanding, or that impairs his having a rational as well as factual understanding of the proceedings brought against him." This situation is thus distinguishable from *United States v. Timmins,* 301 F.3d 974 (9th Cir.2002), where both mental health professionals concluded that the defendant was schizophrenic, delusional, paranoid, and unable to make rational decisions concerning his own defense.

■ Gastelum–Almeida assails the district court's conclusion that he was competent to stand trial on two grounds. First, he argues that the court erroneously gave greater weight to Dr. Ihle's report instead of his own expert's report simply because Dr. Ihle examined the defendant for 12 hours, while the defense's expert examined him for only 2 hours. This is incorrect. The court recognized the conflicting expert

reports and, for the many reasons stated in Dr. Ihle's report, including time spent on evaluation, disbelieved the defense expert's diagnosis of schizophrenia. "In performing its fact-finding and credibility functions, a district court is free to assign greater weight to the findings of experts produced by the Government than to the opposing opinions of the medical witnesses produced by the defendant." *Frank,* 956 F.2d at 875.

■ Second, Gastelum–Almeida argues that the district court improperly refused to allow defense counsel to testify as to her personal observations about the defendant's allegedly bizarre behavior. This is also incorrect. Defense counsel had ample opportunity to discuss her observations with Dr. Ihle, and Dr. Ihle considered those comments in his evaluation. The defense expert also considered defense counsel's observations. Furthermore, as the government notes, defense counsel could have filed an affidavit stating her views within the five months between when the competency hearing was ordered and when it was held. The court's refusal to allow defense counsel to state conclusory allegations about the defendant's lack of competency was not clear error.

## II. Vindictive Prosecution

■ On August 11, 2000, the grand jury returned the original indictment charging Gastelum–Almeida and a co-defendant with three counts. On September 26, 2000, the grand jury returned a first superseding indictment charging him with two additional counts: being an illegal alien found in the United States after a deportation (Count 4); and making a false statement (Count 5). Prior to superseding to add the carjacking count, the government sent a written plea offer to the defendant. The prosecutor told defense counsel that he intended to supersede the indictment to add a carjacking count, but if the defendant would agree to the plea offer, the government would not supersede. Gastelum–Almeida rejected the government's plea offer and a second superseding indictment was returned on October 27, 2000, that included carjacking (Count 6).

Gastelum–Almeida argues that his due process rights were violated because the government vindictively prosecuted him by superseding the original indictment when he didn't accept the government's plea offer. He is incorrect under any standard of review.

■ A prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right. *See Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *Hernandez–Herrera,* 273 F.3d 1213, 1217 (9th Cir.2001). To establish a claim of vindictive prosecution, the defendant must make an initial showing that charges were added because the accused exercised a statutory, procedural, or constitutional right. *See United States v. Garza–Juarez,* 992 F.2d 896, 906 (9th Cir.1993). "Vindictiveness claims are, however, evaluated differently when the additional charges are added during pretrial proceedings, particularly when plea negotiations are ongoing, than when they are added during or after trial." *United States v. Gamez–Orduño,* 235 F.3d 453, 462 (9th Cir.2000). In the context of pretrial negotiations, "vindictiveness will not be presumed simply from the fact that a more severe charge followed on, or even resulted from, the defendant's exercise of a right." *Id.* Prosecutors often threaten increased charges and, if a guilty plea is not forthcoming, make good on that threat. *Id.* at 463. Such prosecutorial actions as part of plea negotiations do not violate due process. *Id.*

There is no indication that anything other than that occurred here. Furthermore,

the prosecutors have filed sworn affidavits stating that the charges were added upon further investigation and review of the case. The district court did not err in denying the Gastelum–Almeida's motion to dismiss.

## III. Speedy Trial Act

### A. Standard of Review

■ A district court's determination of a motion to dismiss for noncompliance with the Speedy Trial Act is reviewed *de novo.*

### B. Analysis

Gastelum–Almeida argues that the charges in the second superseding indictment were brought more than 30 days after his arrest and thus violate his rights under the Speedy Trial Act, 18 U.S.C. § 3161. He is incorrect.

■ A charge contained in a superseding indictment which was not included in the original complaint does not violate the Speedy Trial Act. *See United States v. Heldt,* 745 F.2d 1275, 1279–80 (9th Cir.1984). "A superseding indictment issued before the original indictment is dismissed may issue more than thirty days after the arrest. Not all charges must be filed within the first thirty day period." *United States v. Orbino,* 981 F.2d 1035, 1037 (9th Cir.1992) (citation omitted).

Gastelum–Almeida was indicted within thirty days from the date on which he was arrested on the counts charged in the complaint. The superseding indictments contained charges not included in the original complaint. There was no Speedy Trial Act violation.

## IV. Collateral Attack on 1999 Deportation

### A. Standard of Review

■ A district court's denial of a motion to dismiss an 8 U.S.C. § 1326 charge based upon alleged due process defects in the underlying deportation proceeding is reviewed *de novo. See United States v. Muro–Inclan,* 249 F.3d 1180, 1182 (9th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 180, 151 L.Ed.2d 125 (2001).

### B. Analysis

Count 4 of the second superseding indictment charges Gastelum–Almeida with a violation of 8 U.S.C. § 1326, i.e., being an illegal alien found in the United States "after having been officially deported from the United States on or about October 10, 1991, and October 8, 1999." Gastelum–Almeida contends that the district court should have dismissed Count 4 because the procedures used to secure the 1999 deportation unlawfully deprived him of his due process rights. He is incorrect.

■ In moving to dismiss his indictment under 8 U.S.C. § 1326 based on a due process violation in the underlying deportation proceeding, Gastelum–Almeida must show prejudice resulting from the due process violation. *See Muro–Inclan,* 249 F.3d at 1184. To establish prejudice, he does not have to show that he actually would have been granted relief, just that he had a plausible ground for relief from deportation. *Id.* Gastelum–Almeida contends that he wanted to stay in the country in order to litigate an unrelated appeal before the Ninth Circuit, and to collect on a pending Workers' Compensation claim. These reasons do not constitute plausible grounds for relief from deportation.

The district court refused to dismiss Count 4 because Gastelum–Almeida could not show prejudice stemming from his allegedly unlawful 1999 deportation. It did not err and it need not have considered his other legal arguments.

## V. Deportation of the Illegal Alien Witnesses

### A. Standard of Review

■ The denial of a motion to dismiss for failure to retain witnesses is reviewed *de novo. See United States v. Pena–Gutierrez,* 222 F.3d 1080, 1085 n. 1 (9th Cir.), *cert. denied,* 531 U.S. 1057, 121 S.Ct. 670, 148 L.Ed.2d 570 (2000). The district court's underlying factual findings are reviewed for clear error. *Id.*

### B. Analysis

Gastelum–Almeida argues that the district court erred in refusing to dismiss the carjacking charge, Count 6, based on a violation of his Fifth and Sixth Amendment rights. According to Gastelum–Almeida, the government acted in bad faith in obtaining the second superseding indictment because it had already deported the illegal alien witnesses who had not been designated by either party. We reject the argument.

To show that the government's deportation of the alien witnesses violated his Fifth Amendment right to due process and his Sixth Amendment right to compulsory process, Gastelum–Almeida must show that the government acted in bad faith and that this conduct resulted in prejudice to his case. *See United States v. Dring,* 930 F.2d 687, 693 (9th Cir.1991). The record reveals no evidence of bad faith or prejudice.

■ To establish that the government acted in bad faith, Gastelum–Almeida must show either that the government departed from normal deportation procedures, or that it deported the witnesses to gain an unfair tactical advantage at trial. *Pena–Gutierrez,* 222 F.3d at 1085. The government need not prove good faith; Gastelum–Almeida bears the burden of proving that the government acted in bad faith. *Dring,* 930 F.2d at 694.

■ There is no indication that the government deviated from its normal procedures for deporting illegal aliens or acted to gain a tactical advantage. Special Agent White's affidavit in support of the complaint contained numerous references to Gastelum–Almeida's use of a gun to take control of the van: one of the witnesses said that the defendant "produced a gun and put it to the head of the driver and made him stop [the van]; another witness said that the defendant took control of the van with a gun. Defense counsel interviewed the witnesses prior to their deportation, prior to *any* indictment having been filed, and did so with full knowledge that Gastelum–Almeida had allegedly used a firearm in connection with smuggling aliens."

To demonstrate prejudice, Gastelum–Almeida must "make[ ] a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." *United States v. Valenzuela–Bernal,* 458 U.S. 858, 872–73, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982); *see Dring,* 930 F.2d at 693–94. He speculates that because certain witnesses did not mention use of a gun, they would then testify that Gastelum–Almeida did not use a gun to take over a van, rob the driver and the smuggler in the passenger seat, extort money from the aliens, and keep them from leaving a residence until their families paid up. We reject the argument.

## VI. Grouping Counts Pursuant to U.S.S.G. § 3D1.2

### A. Standard of Review

■ A district court's refusal to group offenses under the Sentencing Guidelines is reviewed *de novo. See United States v. Nanthanseng,* 221 F.3d 1082, 1084 n. 2 (9th Cir.2000).

## B. Analysis

The district court grouped Counts 1–3, but declined to group Counts 4–6. Gastelum–Almeida argues that all six counts in the second superseding indictment should have been grouped together under the Sentencing Guidelines because they involved the same victim and occurred at the same time, and because they were part of the same criminal episode. He is incorrect.

U.S.S.G. § 3D1.2 provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." Counts involve the same harm "[w]hen counts involve the same victim and the same act or transaction," U.S.S.G. § 3D1.2(a), or "[w]hen counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan," U.S.S.G. § 3D1.2(b). The term "victim" does not include indirect or secondary victims. U.S.S.G. § 3D1.2, cmt. n. 2.

Count 6, the carjacking charge, and Counts 1–3, the alien smuggling charges, had different primary victims. For carjacking, the primary victims were the two smugglers, i.e., the driver and the person in the passenger seat. For the smuggling charges, the victim was the United States, and the societal interest was the prevention of violation of the immigration laws. *See* U.S.S.G. § 3D1.2, cmt. n. 2. The harm caused by the carjacking was not the same as the harm caused by alien smuggling. *See, e.g., United States v. Malone*, 222 F.3d 1286, 1297–98 (10th Cir.2000) (affirming the district court's decision not to group carjacking charge with the subsequent robbery of a third party).

Similarly, Count 4, being an illegal alien in the country after deportation, was separate and distinct from the offenses of alien smuggling and carjacking. Although Gastelum–Almeida needed to enter the United States to commit a crime here, that subsequent crime—be it alien smuggling or check-kiting—constitutes a harm different from the incident of illegal reentry.

As for Count 5, the false statement charge, where society at large is the victim, the sentencing court determines whether the harmed societal interests are closely related. *See* U.S.S.G. § 3D1.2 cmt. n. 2; *Nanthanseng*, 221 F.3d at 1084. As the government notes, the false statement charge protects a societal interest distinct from the immigration and alien smuggling charges. The societal interest at issue in the false statement is the provision of truthful information for law enforcement. Furthermore, the false statement—giving the wrong name to authorities—occurred after the criminal episode, i.e., after Gastelum–Almeida was arrested and the original criminal act had been thwarted.

**AFFIRMED.**