**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-30051 |
| Plaintiff - Appellee, | D.C. No. 2:08-cr-00295-JCC-1 |
| v. | |
| GINO AUGUSTUS TURRELLA, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Argued and Submitted February 10, 2012
Seattle, Washington

Before: SCHROEDER, ALARCÓN, and GOULD, Circuit Judges.

Gino Augustus Turrella appeals from his conviction of transmitting in

interstate commerce a communication containing a threat to injure another person,

in violation of 18 U.S.C. § 875(c), the use without lawful authority of the

identification of another person, contrary to 18 U.S.C. § 1028(a)(7) and (c)(3)(A),

---

     [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

with the intention to commit a violation of § 875(c), as well as the possession of .45 caliber pistols in furtherance of the violation of § 875(c) under 18 U.S.C. § 924(c)(1)(A)(i). Accordingly, at Turrella's trial, the jury was required to determine, from the totality of the circumstances, whether it was persuaded beyond a reasonable doubt that Turrella used another person's identity to threaten his alleged victims with violence.

The jury found that Turrella communicated threats of violence using another person's identity. The jury also found that Turrella possessed firearms in furtherance of the threats he made while using another person's identity. Turrella has not appealed from his conviction of violations of § 875(c) or § 1028(a)(7) and (c)(3)(A). Therefore the only issue in this appeal is whether the prosecution presented sufficient evidence to persuade a rational trier of fact beyond a reasonable doubt that Turrella possessed .45 caliber pistols in furtherance of the threats he communicated while using another person's identity. We affirm because we conclude that the direct and circumstantial evidence presented by the Government was sufficient under this standard to support Turrella's conviction of the possession of a firearm in furtherance of the threats he communicated. We also reject Turrella's contention that the district court erred in finding that he was competent to stand trial.

I

We first discuss Turrella's contention that the district court erred in finding that he was competent to stand trial. "A district court's determination that a defendant is competent to stand trial is reviewed for clear error." *United States v. Gastelum-Almeida*, 298 F.3d 1167, 1171 (9th Cir. 2002).

The test for competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and a rational as well as factual understanding of the proceedings against him." *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *see* 18 U.S.C. § 4241(a). "In performing its fact-finding and credibility functions, a district court is free to assign greater weight to the findings of experts produced by the Government than to the opposing opinions of the medical witnesses produced by the defendant." *United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1992).

The district court was persuaded by the opinion of the prosecution's expert witness that Turrella was competent to stand trial. This reliance by the district court was not clear error. *Id.*

II

Turrella contends that the district court erred in denying his Rule 29(c) motion for a judgment of acquittal of the allegation that he possessed a firearm in

3

furtherance of a crime of violence. He argues that the Government failed to present sufficient evidence to demonstrate that a nexus existed between his ownership of firearms and the fact that he transmitted threatening emails using another's identity. He argues that "the fact that [he] used someone else's name [to send the threatening emails] negates any inference that he intended to use his own firearms to facilitate the crime." (Opening Br. 16.) We disagree. We are bound by the jury's finding that Turrella, while using another person's identity, threatened his victims with violence and death. The jury also found that he threatened to use a .45 caliber weapon to kill his co-workers, possessed three .45 caliber pistols at the time that he made his threats, and also bragged to his co-workers that he possessed such weapons.

The record shows that, during the summer of 2004, graffiti was written on the walls of a men's restroom in one of the buildings of the Boeing Company's Auburn plant on several occasions. The first one stated, "POSTMANS (sic) COMING BUT ITS NOT TO DELIVER THE MAIL, BITCH." Two others expressed anger at people at the Boeing Company and again referenced the post office. The fourth incident read:

> WANNA FUCK WITH PEOPLE IN THE 6?
> POSTMAN HAS AN AK47 AND THE BAG NO MAIL.
> COME ON FUCKERS.

4

On November 3, 2004, Mr. James Ockerman received an inter-plant envelope that contained a live bullet. On November 10, 2004, Ockerman received a second inter-plant envelope which contained a live bullet wrapped in a note which also contained a threat of violence. Ockerman received a third inter-plant envelope on March 23, 2005. It contained a powder that flew up in the face of John Seltzer, a corporate investigator in the security department at the Boeing Company. The envelope also contained a live bullet and a note that stated, inter alia, "what will you say to survivors' families?" On the day that the envelope with powder was received, Seltzer decided that Turrella was responsible for writing the threats and placing graffiti on bathroom walls.

Seltzer met Turrella that afternoon at his car when he arrived at the Boeing Auburn facility. Seltzer advised Turrella that he was investigating the various threats. He asked Turrella if Turrella owned any weapons. Turrella replied that he owned "a couple" of .45 caliber handguns. When Seltzer asked Turrella to provide handwriting samples, including writing out the statements that were in the threatening notes, Turrella objected, stating that Seltzer was making him "'write things that are in my notes.'" He quickly corrected himself, calling them "the notes." He stated further that this was "immoral and unethical." Seltzer had not shown Turrella the notes prior to Turrella's admission. Based on Seltzer's

5

recommendation, Boeing suspended Turrella. Turrella's employment was terminated on August 16, 2005.

On April 19, 2007, an email was sent to Ockerman which stated, inter alia, "boeing (sic) security will live to regret it" and "pay back can be more effective now than anything in the past." On April 22, 2007, another email was sent to Ockerman and Seltzer. It stated that "Auburn fabrication is about to get some national publicity you mother fuckers will regret."

On May 2, 2008, Turrella sent an email to Seltzer, using James Ockerman's name, which stated in part: "I'm coming in the 6 building with a gun and shoot ever (sic) employee I see." It also stated: "I'll drop you like a sack of shit with my .45 auto." When Seltzer read the email he "immediately thought it was Gino Turrella writing it" based on prior investigation and interview with Turrella. He referred the results of his investigations to the Federal Bureau of Investigation. In searching Turrella's home, FBI agents found three .45 caliber handguns and ammunition similar to the live bullets Ockerman received.

The evidence that Turrella included live ammunition in some of his threatening messages, told Seltzer and other Boeing employees that he owned .45 caliber pistols, and threatened to kill Boeing employees with a .45 automatic weapon was sufficient to support an inference that Turrella possessed firearms in

furtherance of his threats to commit violence and homicide.  Therefore, we conclude that the evidence was sufficient to persuade a rational trier of fact beyond a reasonable doubt that he used his own firearms to further his crimes of violence.

AFFIRMED.